### STATE v. PORTEE

### (115 S. E., 238)

1. INDICTMENT AND INFORMATION—INDICTMENT FOR MURDER BY STRIKING WITH AUTOMOBILE HELD NOT TO CHARGE DISTINCT OFFENSES.— An indictment for murder by striking deceased with plaintiff's automobile, although reciting that accused "did make an assault" with his automobile and did "run against, strike, throw to the ground, run over, crush, bruise and wound" deceased, *held* not objectionable as charging three or more distinct offenses, under Cr. Code 1912, § 87, as to indictment for murder.

2. CRIMINAL LAW—CONFLICTING EVIDENCE PROPERLY SUBMITTED TO JURY.—Where testimony is susceptible of more than one inference, it is properly submitted to the jury.

3. CRIMINAL LAW—NOT ERROR TO FAIL TO CHARGE WHERE NO CHARGE REQUESTED.—The failure of the trial Court to charge on a certain aspect of the case cannot be assigned as error, where the Court was not so requested.

4. HOMICIDE—IN PROSECUTION FOR MURDER BY STRIKING WITH AUTOMOBILE, INSTRUCTION AS TO WHETHER ACCUSED'S NEGLIGENCE WAS PROXIMATE CAUSE OF DEATH HELD NOT REQUIRED.—In prosecution for murder by running into deceased with an automobile, *held*, it was not error to fail to charge the jury that accused's negligence must be shown to have been the proximate cause of deceased's death beyond a reasonable doubt.

5. CRIMINAL LAW—CHARGE ON IMPLIED MALICE FROM USE OF DEADLY
   WEAPON OR DANGEROUS INSTRUMENTALITY HELD NOT CHARGE ON THE
   FACTS.—In trial for murder by running into deceased with auto-
   mobile, a charge that "implied malice is such as you have a right to
   infer from the use of a deadly weapon, as in this case, you have a
   right to infer malice from the reckless handling of a dangerous in-
   strumentality until the circumstances show that it was not of that
   character," *held* not erroneous as a charge on the facts; it being
   the apparent intention of the trial Court simply to charge the jury
   that it was for them to draw the inference from the testimony, as
   to implied malice, in the instant case.

6. HOMICIDE—IN PROSECUTION FOR MURDER BY RUNNING INTO DE-
   CEASED WITH AUTOMOBILE, CHARGE REFERRING TO LAW OF MAN-
   SLAUGHTER IN PERSONAL ENCOUNTER HELD NOT ERRONEOUS.—In pros-
   ecution for murder by running into deceased with automobile in
   which the jury had the right under the testimony to find a verdict
   of manslaughter against accused, *held,* it was not error to mention
   in the charge the different kinds of manslaughter, such as man-
   slaughter in cases of personal encounter, by way of illustration.

7. HOMICIDE—ILLUSTRATION IN CHARGE HELD NOT PREJUDICIAL.—In
   prosecution for murder by running into deceased with automobile,
   a charge stating, in part, "Now, a familiar example given in the
   books is, where a man rides a horse at full speed upon a crowded
   thoroughfare and runs over some man and kills him, the law says
   he is supposed to intend the natural consequences of his wanton con-
   duct, and although he may not know the man whom he kills, may not
   have any feelings towards him at all, his reckless, high-handed con-
   duct has supplied it, or you would infer from his reckless, high-
   handed conduct that it was done maliciously, and the law charac-
   terizes it as murder," *held* not prejudicial to accused's rights.

8. CRIMINAL LAW—REFUSAL TO SET ASIDE VERDICT FOR JURY'S MISCON-
   DUCT NOT DISCOVERED UNTIL VERDICT HAD BEEN RENDERED HELD NOT
   ABUSE OF DISCRETION.—Refusal to set aside verdict of manslaughter
   in a murder trial and to award a new trial to accused because of
   discovery, after rendition of the verdict, that a juror had expressed
   himself adverse to accused before the juror was sworn in the case,
   *held* not an abuse of discretion.

Before GARY, J., Lexington January, 1921 Appeal
dismissed.

Russell Portee, Jr., convicted of manslaughter and ap-
peals.

The indictment and charge referred to in the opinion
were as follows:

## INDICTMENT

" * * * The jurors of and for the County aforesaid, in the State aforesaid upon their oath present:

"That Russell Portee, late of the County and State aforesaid, in the year of our Lord one thousand nine hundred and twenty, with force and arms, at Lexington, in the County and State aforesaid, in and upon one John C. Turner, feloniously, willfully and of his malice aforethought, did make an assault, and that the said Russell Portee, him, the said John C. Turner then and there feloniously, willfully and of his malice aforethought, with a certain heavy and powerful automobile, which he, the said Russell Portee, was operating and driving at a high, careless, reckless, willful, wanton and unlawful rate of speed, and in a highly careless and reckless manner in, on, along and over a public highway, the same being one of the leading and principal highways or thoroughfares leading from the town of New Brookland in a westerly direction to the town of Lexington, in said County and State, and while the said Russell Portee was so driving said automobile, in a careless, reckless, dangerous and unlawful rate of speed and in a grossly reckless and careless manner, in a westerly direction, in a densely populated community just without and near the town of New Brookland, and at or near the intersection of two public highways or streets, where many people were known to travel and people were liable to be traveling and moving at any and all times and hours of the day, did, feloniously, willfully and of his malice aforethought, with said automobile, while driving at the rate and in the manner aforesaid, him, the said John C. Turner, run against, strike, throw to the ground, run over, crush, bruise and wound, or cause the said automobile to run against, strike, knock down, crush, bruise, and wound, giving to the said John C. Turner thereby in and upon the body of him, the

said John C. Turner, mortal wounds, of which said mortal wounds the said John C. Turner then and there died.

"And so the jurors aforesaid, upon their oath aforesaid, do say that the said Russell Portee, him, the said John C. Turner, then and there, in the manner and by the means aforesaid, feloniously, willfully and of his malice afore-thought, did kill and murder against the form of the Statute in such case made and provided, and against the peace and dignity of the State."

### JUDGE'S CHARGE

"* * * A felonious killing is either murder or man-slaughter. He is charged with a felonious killing; he is charged with manslaughter just as much as he is charged with murder; and I will explain to you the difference, and I hope you will see the distinction when I explain it to you. 'Murder' is the killing of a human being with malice. That malice may be either expressed or implied. 'Express malice' is such as is manifested by some outward demonstration, such as lying in wait for one's victim, or making threats to take his life. That is express malice. 'Implied malice' is such as you have a right to infer from the use of a deadly weapon, or, as in this case, you have a right to infer malice from the reckless handling of a dangerous instrumentality until the circumstances show that it was not of that char-acter.

"Now, I repeat: 'Murder' is the felonious killing of a human being with malice. There is also a lower grade of felonious killing called 'manslaughter.' The law recognizes that there are times in a man's life when he is placed in such a situation that he does not act from design, but where he acts from impulse. In a proper case of that sort, it will mitigate his offense, although it does not excuse it.

"Just to give you an illustration on that, I will indicate what I am talking about, and what I want to do is to make myself plain to you. Suppose I were to approach you and

spit in your face; the law looks upon that as such an in-
dignity as is calculated to make you lose control of yourself,
and if, smarting under that insult, you should kill me, the
law would not say it is murder; the law would say you
ought not to have killed him, but the law does not call it
murder, but will call it manslaughter; you acted upon im-
pulse and not upon premeditation. There is an absence of
malice, and that is the distinguishing difference between
murder and manslaughter. In murder there is the presence
of malice, which is either expressed or implied from the
reckless use of a dangerous instrumentality, or, rather, it
is a homicide from the use of any other deadly weapon, and,
as I say, you have a right to infer malice from those things;
but if the testimony and the surrounding circumstances
negative that idea, then there is no room for the presump-
tion or inference.

"I have told you what murder is, and what manslaughter
is. Now, the defendant says that, although he ran the au-
tomobile over him, the killing was through misadventure,
through accident. I should have told you in the beginning
that a homicide may be either excusable, or it may be felo-
nious. If it is a felonious killing, it is either murder or
manslaughter. It is excusable if it is a killing that is done
under circumstances which the law will excuse. That is the
difference between the two kinds of killings—excusable
killing or a felonious killing.

"A killing that is done through accident presupposes that
the accident was brought about through no fault on the part
of the man who did the killing. That is one of the in-
gredients of a killing by misadventure, that it is a killing
by accident through no fault of the party who does the
killing.

"You can very well understand how a man may some-
times take the life of a human being under circumstances
where he cannot prevent it. Just to give you an illustration:
Suppose you are driving your horse and buggy up the street

at a proper rate and in a proper way, and a child suddenly jumps in front of your horse and is trampled to death; that would be a homicide through misadventure, through no fault of the party who brings about the killing; but in order to constitute a homicide through misadventure, there must be an accident, through no fault of the party who brings it about. If a party is acting with a dangerous instrument or instrumentality in a reckless way, in such a reckless way as to show utter disregard for human life, and death results from that, it is murder; that is what the law calls murder. Now, a familiar example given in the books is, where a man rides a horse at full speed upon a crowded thoroughfare and runs over some man and kills him, the law says he is supposed to intend the natural consequences of his wanton conduct, and although he may not know the man whom he kills, may not have any feelings towards him at all, his reckless, high-handed conduct has supplied it, or you would infer it from his reckless, high-handed conduct that it was done maliciously, and the law characterizes it as murder.

"There is another phase that I want to call specifically to your attention. I have explained the difference between murder and manslaughter, and here is the distinction the law draws, as I understand it: If you are negligent in the handling of a dangerous instrumentality—now, mark you, I said negligent—not handling it in a reckless disregard of human life, in a high-handed way and in showing a mind that is fatally bent on mischief, but if you are using a dangerous instrumentality negligently, and death results to some one, that would be a foundation for manslaughter. That is the difference, and I want you to mark the difference between the handling of a dangerous instrumentality in such a reckless way as to show an utter disregard for human life, which would be a foundation for murder, and the handling of a dangerous instrumentality in a negligent way. If one is killed under those circumstances, not because he is han-

dling it in a high-handed way showing that he is utterly dis-
regardful of human life, but if he is using it in a negligent
way, the law says that would be manslaughter.

"Now, what is negligence? 'Negligence' is the failure
to observe due care, or is the doing of what an ordinarily
prudent person would not do under the particular circum-
stances, or the failing to do that which an ordinarily pru-
dent person would do under the circumstances. If this de-
fendant was guilty of conduct of that kind, with a danger-
ous instrumentality, and death resulted as a consequence of
that, then that would be a foundation for manslaughter,
which is very different thing from murder.

"Now, gentlemen, there is another phase of the law. If
I give you law that is not sound, there is a tribunal that will
correct me. I will be appealed from to the Supreme Court,
and any mistake that I make will be promptly corrected.

"When any one violates the Statute law of the State,
when one is violating the law as laid down by our Legis-
lature, that is negligence in itself—now, mark that. Now,
in order to prevent injuries upon the public highways, our
Legislature has gone as far as it could to enact laws, and
calls upon the citizens to obey those laws. When a citizen
does not obey those laws, he is acting negligently. That is
negligence *per se,* negligence in itself—the failure to obey
the law of the State. Now, what does the law require of
one who drives an automobile along the public highways?
It requires one not to exceed a speed of 25 miles an hour
under any circumstances; under no circumstances shall he
exceed a speed of 25 miles an hour.

"When one approaches where a thoroughfare crosses a
public highway or street, he must bring his automobile to a
speed not exceeding 6 miles an hour, and, if the necessity
of the case requires it, he shall bring his automobile to such
speed as is safe under the circumstances, and shall at all
times have his machine under control. That is what our
Legislature has said in order to prevent accidents or killings

or injuries upon the highways.   When one disregards those laws as laid down by our Legislature, then he is acting negligently, and if it is a dangerous instrumentality, and death results to some one, it may be a foundation for manslaughter.

"Now, gentlemen, there is another phase of the law that I want to repeat to you.   The burden is upon the State to show that this was a felonious killing, that it is not an accidental killing, that is a killing through misadventure, through no fault of the party who did the killing.   The burden is on the State of South Carolina; it must show that it was a felonious killing beyond a reasonable doubt.

"Now, what is a 'reasonable doubt?'   It is hard to give you any term that will give you any clearer conception of it than the words that are used; but it may be said to be a substantial doubt produced in your minds by the evidence, not a whimsical, fanciful doubt, but a substantial doubt produced of that kind, as to whether it is a felonious homicide, it is your duty to acquit him.

. "Now, gentlemen, I intended to tell you in the language of our Supreme Court what 'malice' is, as a further definition in addition to what I have already told you.   'Malice' is a term of art implying wickedness and excluding a just cause or excuse.   It may be implied from an unlawful act willfully done until the contrary be proved.   It is also defined to be the willful or intentional doing of a wrongful act without just cause or excuse.

"Now, gentlemen, in conclusion, I want to tell you it makes no difference whether the defendant knew this man or not; it is not essential that he should have set out to take his life; that is not what is necessary for the State to prove.   But it is necessary for the State to prove to your satisfaction beyond a reasonable doubt that he was either handling a dangerous instrumentality in a reckless, highhanded way, in such a way as to show an utter disregard for human life, in which case it would be a foundation for

murder; or the State must show that he was negligently
handling a dangerous instrumentality and death resulted
to the deceased as alleged.   In that case it would be a foun-
dation for manslaughter.   I have told you that 'negligence'
is the failure to observe due care, or is doing that which an
ordinary prudent person would not do under the particular
circumstances, or the failing to do that which an ordinarily
prudent person would do under the same circumstances;
and I told you the failure to observe the law of the land
was negligence, negligence within itself.   So, when you
go to your jury room, you will inquire whether this man
is guilty of a reckless disregard of human life by the way
in which he handled that machine, and did death result from
a reckless disregard of human life.   If you find it did not,
you will go a step further and say did death result from the
negligent handling of a dangerous instrumentality, which
would be a foundation for manslaughter.

"I do not know of anything else to tell you.   I hope you
approach this case as I do, with a desire to see the law
vindicated, but not to wreak vengeance upon any individual.
You and I are supposed to be disinterested; we are here
to carry out the law, and I have tried to carry out my
part of it to the best of my ability.   I have tried to keep off
your province, which is to find the facts.   You are supposed
to accept the law as I give it to you, and I hope that you
will not invade my province, but accept the law as I give
it to you, and apply it to the facts as you find them, and find
a verdict accordingly, no matter whom it hurts. * * * "

*Messrs. Timmerman & Graham,* for appellant, cite: *In-
dictment set up three distinct offenses under Secs.* 601,
602, 612, *Crim. Code* 1912. *Not permissible:* 1 Strob., 455;
2. Brev., 487; 1 Spear, 305; 1 Spear, 310; 1 Rich., 260;
Bish. Crim. Proc., Sec. 432; 10 Enc. Pl. & Pr., 532. *Vio-
lation of law as to speed did not establish that defendant
was guilty of manslaughter:* 109 S. C., 273; 114 S. C., 262.

*Negligence of deceased appears from testimony and new
trial should have been granted:* 113 S. E., 476; 113 S. E.;
351; 112 S. E., 823; 110 S. E., 78; 110 S. E., 117; 110
S. E., 118; 110 S. E., 398; 110 S. E., 927. *Failure to
charge as to burden of proof on the State to prove neg-
ligence was error:* 111 S. C., 59; 109 S. C., 273; 115 S. C.,
216; 104 S. C., 259. *Charge should be full:* 153 U. S.,
625. *Charge on facts:* 109 S. C., 117. *Charge inapplicable
to facts of case was error:* 103 S. C., 277; 109 S. C., 117;
150 U. S., 422; 115 S. C., 216; 72 S. C., 195; 103 S. C.,
280. *Where improper juror has been accepted in ignorance
verdict should not stand:* 104 S. C., 357; 114 S. C., 154;
112 S. C., 95; 112 S. C., 142; 111 S. C., 467; 103 S. C.,
220; 90 S. C., 434. *Presumption of innocence:* 72 S. C.,
201.

*Mr. T. C. Callison, Solicitor,* for the State.

December 29, 1922.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

The following statement appears in the record:

"The defendant while operating an automobile in the
street or highway, near the town of New Brookland, Lex-
ington County, on the 13th day of ———, 1920, struck
and killed one J. C. Turner."

The deceased in crossing the highway from the west to
the east side, and while in the street, a motorcycle passed
just in front of him, and the automobile operated by the
defendant was some 40 or 50 feet in rear of the motor-
cycle, and on the extreme right of the highway, and when
defendant's automobile was near deceased, instead of his
proceeding on across the street or standing still, he jumped
backwards in front of defendant's automobile, and was
struck and so injured that he died in a short time there-
after.  At the January term of the Court of General Ses-

sions for Lexington County; the defendant was indicted for murder. When the case was called for trial, the defendant moved the Court to quash the indictment, on the ground that three or more distinct offenses were charged in the one and only count contained in the indictment, and that two or more offenses should not be united in the same count, and that the indictment was bad on account of duplicity and multifariousness.

The motion having been overruled, the defendant entered a plea of not guilty, and a jury was empaneled and after the taking of the testimony, the argument of counsel, and the charge of the Court, the defendant was found guilty of manslaughter, whereupon he moved the Court to set aside the verdict for a new trial, on the several grounds set out in the record. The motion for a new trial having been overruled, the Court sentenced the defendant to three years' imprisonment, from which judgment he appeals and asks for a reversal of the same upon the exceptions contained in "this record."

A copy of the indictment and of the entire charge will be reported.

The exceptions will be considered in regular order.

The first exception is as follows:

(1) "Because the indictment shows in the one and only count contained therein that the defendant is charged with three or more distinct offenses, which could not be united in one count, and that his Honor erred as a matter of law in not so holding and quashing the indictment."

Section 87, Criminal Code of 1912, is as follows:

"Every indictment for murder shall be deemed and adjudged sufficient and good in law, which in addition to setting forth the time and place, together with a plain statement, divested of all useless phraseology of the manner in which the death of deceased was caused, charges that the defendant did feloniously, willfully, and of his malice aforethought, kill and murder the deceased."

The indictment herein was a substantial compliance with the said requirements, and this exception is overruled.

The second exception is as follows:

(2) "Because the verdict is contrary to the weight of the testimony, in that it plainly shows that the deceased, J. C. Turner, who was crossing the street or highway, jumped backward in front of the automobile and was struck, and that his death was caused by his own negligence without which it would not have occurred."

The testimony was susceptible of more than one inference, and therefore was properly submitted to the jury. This exception is, likewise, overruled.

The third exception is as follows:

(3) "Because there is no reasonable inference that could be drawn from all of the testimony that would support a verdict of felonious killing, no reasonable inference can be drawn that will support that kind of a verdict, when the testimony plainly shows that the defendant who was operating the automobile was on the extreme right hand side of the street or highway, and the deceased, having been in or near the center of the street, jumped backward in front of the automobile and was struck by it, and his death was caused by his negligence in jumping backward in front of the machine, and his Honor erred as a matter of law in not so holding and granting the defendant a new trial."

What has already been said shows that this exception cannot be sustained.

The fourth exception is as follows:

(4) "Because the Court did not charge the jury the law applicable to the facts of this case as he is required to do, in that he failed to charge the jury that if the defendant was negligent in operating the automobile, running it at a rate of speed forbidden by law, the jury should acquit him unless the State prove beyond a reasonable doubt that the negligence of the defendant was the proximate cause of the death of the deceased. That the State was bound to

satisfy the jury beyond a reasonable doubt that the death of the deceased, Turner, was brought about· by the negligence of the defendant, and that his negligence was the proximate cause of Turner's death."

The failure of his Honor, the presiding Judge, to charge in the manner stated in the exception, cannot be assigned as error, for the reason that he was not so requested. *State v. Adams,* 68 S. C., 421; 47 S. E., 676. If it was deemed necessary numerous other decisions could be cited.

Furthermore, his Honor, the Circuit Judge, charged this proposition:

"Now, gentlemen, there is another phase of the law, that I want to repeat to you. The burden is upon the State to show that this was a felonious killing, that it is not an accidental killing; that is, a killing through misadventure, through no fault of the party who did the killing. The burden is upon the State of South Carolina; it must show that it was a felonious killing beyond a reasonable doubt."

The question of proximate cause is applicable to civil actions, while in criminal cases the testimony must establish the guilt of the prisoner beyond a reasonable ˙doubt. This exception is overruled.

The fifth exception is as follows:

(5) "Because the Court erred in charging the jury:

'Implied malice is such as you have a right to infer from the use of a deadly weapon, as in this case, you have a right to infer malice from the reckless handling of a dangerous instrumentality until the circumstances show that it was not of that character. The error being that it was a charge on the facts and placed the burden on the defendant to show that it was not a dangerous instrumentality under the circumstances of this case, whether reckless or negligent be considered, whereas the burden was on the State that it was a dangerous instrument and was also a charge on the facts."

His Honor, the Circuit Judge, simply meant to charge the jury that it was for them to draw the inference from the

testimony, as to implied malice, in the case then under consideration. The charge, in its entirety, shows beyond question that such was his intention. This exception cannot be sustained.

The sixth exception is as follows:

(6) "The Court erred in charging the jury the law of manslaughter in cases of personal encounter, as the charge had no application to the case at bar, was foreign to the issue being tried, and the only effect it could have had would be to confuse the minds of the jury."

As the jury had the right under the testimony to find a verdict of manslaughter against the defendant, it cannot be successfully contended that it was error to mention the different kinds of manslaughter, by way of illustration. The exception is overruled.

The seventh exception is as follows:

(7) "The Court erred in charging the jury: 'If you are using a dangerous instrumentality negligently, and death results to some one, that would be a foundation for manslaughter.' The error being that the charge entirely disregarded the doctrine of proximate cause, which was of vital importance in this case, and which he should have told the jury."

The only error assigned is that the charge disregarded the doctrine of proximate cause. We have already shown that such doctrine has no application to criminal cases; and that his Honor, the presiding Judge, charged the jury that they could not render a verdict of guilty, unless they were satisfied of the defendant's guilt beyond a reasonable doubt. This exception is overruled.

The eighth exception is as follows:

(8) "The Court erred in repeating the above charge in the following language: 'When one disregards those laws as laid down by our Legislature, then he is acting negligently, and if it is a dangerous instrumentality and death results to some one it may be a foundation for manslaughter.'

21—S. C.—122

The error being that the charge entirely disregarded the doctrine of proximate cause, which was the vital question at issue in this case, upon which point the Court should have given the jury the law of proximate cause."

This exception is overruled for reasons already stated.

The ninth exception is as follows:

(9) "The Court erred in charging the jury: 'Now, a familiar example given in the books is, where a man rides a horse at full speed upon a crowded thoroughfare and runs over some man and kills him, the law says he is supposed to intend the natural consequences of his wanton conduct, and although he may not know the man whom he kills, may not have any feelings towards him at all, his reckless, high-handed conduct has supplied it, or you would infer it from his reckless, high-handed conduct that it was done maliciously, and the law characterizes it as murder.' The error being that the charge so given was wholly inapplicable to the facts of this case and could have had no other effect than to becloud the minds of the jury and made them to believe that if a man was running an automobile at a rate of speed greater than that allowed by law, and death resulted to any one, that he would be guilty of a crime the person so killed was guilty of negligence, and his negligence was the proximate cause of his death and with which negligence on his part he would not have killed."

This part of the charge was merely illustrative, and it cannot successfully be contended that it was prejudicial to the rights of the appellant, especially when the charge is considered in its entirety. The exception is overruled.

The tenth exception is as follows:

(10) "His Honor erred in charging the jury: 'There is another phase that I want to call specifically to your attention. I have explained the difference between murder and manslaughter, and here is the distinction the law draws, as I understand it: If you are negligent in the handling of a dangerous instrumentality—now, mark you, I said negligent, not

handling it in a reckless disregard of human life, in a high-handed way and in showing a mind that is fatally bent upon mischief; but if you are using a dangerous instrumentality negligently, and death results to some one, that would be a foundation for manslaughter. That is the difference, and I want you to mark the difference between the handling of a dangerous instrumentality in such a reckless way as to show an utter disregard for human life, which would be a foundation for murder, and the handling of a dangerous instrumentality in a dangerous way. If one is killed under those circumstances, not because he is handling it in a high-handed way showing that he is utterly disregardful of human life, but if he is using it in a negligent way, the law says that would be manslaughter.' The error being that in thus charging the law his Honor did not tell the jury the law of proximate cause, and the charge thus given to the jury was calculated to and did impress them with the idea that his Honor believed the defendant was either guilty of murder or manslaughter. If the defendant was negligent in handling the automobile, no matter whether death of the deceased was caused by his own negligence as an approximate cause of it."

The only ground of error assigned relates to the doctrine of proximate cause, which has no application to criminal cases. The rule of the criminal law, in accident cases resulting in death, is that the State must prove beyond a reasonable doubt that the negligence of the accused caused the death of the deceased—a doctrine entirely distinct from that of proximate cause. This exception is overruled.

The eleventh exception is as follows:

8 (11) "Because the juror, Curtis Derrick, had expressed himself adverse to the defendant before he was sworn as a juror in this case, and was therefore incompetent as a juror to sit upon the trial of this case, and his Honor erred as a matter of law in not so holding and setting aside the verdict and awarding a new trial to the defendant."

The conduct of the juror was not discovered until the verdict had been rendered. The appellant's attorneys, however, have failed to satisfy this Court that his Honor, the Circuit Judge, erroneously exercised his discretion in refusing to set aside the verdict, on the ground mentioned in the exception.

The twelfth exception is as follows:

(12) "The Court erred in charging the jury: 'Implied malice is such that you have the right to infer from the use of a deadly weapon, or, as in this case, you have a right to infer from the reckless handling of a dangerous instrumentality until the circumstances show that it was not of that character.' The error being: First, that it was a charge on the facts in violation of the constitutional inhibition against charging on facts; and, second, that it was in violation of the well-established rule that malice may not be inferred from the mere fact of the killing when all of the testimony was brought out on the trial of the cause, but the State who asserts malice must prove it beyond a reasonable doubt."

What was said in considering the other exceptions, especially the fifth, shows that this exception cannot be sustained.

Appeal dismissed.