547 S.E.2d 497

**The STATE, Respondent,**

**v.**

**Larry G. HARVIN, Appellant.**

**No. 25297.**

Supreme Court of South Carolina.

Heard April 25, 2001.

Decided May 29, 2001.

</div>

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Jeffrey A. Jacobs, Columbia; and Solicitor David P. Schwacke, North Charleston, for respondent.

MOORE, Justice:

Appellant was convicted of murder and armed robbery and sentenced to life imprisonment plus a concurrent term of thirty years. We affirm.

## FACTS

The victim, Bertha Joan Wilson, was shot and killed while she was working the cash register at a Citgo station in Charleston. Her body was found in a storage room around 4:00 a.m. on October 19, 1996. Two cash register trays were on the floor and the store safe was open. A total of $331 was later found to be missing.

Around the time of the victim's murder, appellant spoke with his mother, Mrs. Wilson,[1] who lived in Rochester, New York. He told her he wanted to leave South Carolina because someone was trying to kill him. Mrs. Wilson sent appellant a

---

1. No relation to the victim.

bus ticket and he arrived in Rochester in early November 1996.

While appellant was living with her and her husband, Mrs. Wilson overheard appellant tell her husband he shot someone in Charleston. Mrs. Wilson gave this information to the Charleston Police Department. Detective Michael Gordon then contacted the Rochester City Police Department and asked that they be on the lookout for appellant who was no longer living at the Wilson residence.

At 9:00 a.m. on April 21, 1997, appellant voluntarily arrived at the Rochester Police Department with Mr. and Mrs. Wilson. Mr. Wilson had told appellant the police were going to question him about the Charleston homicide. At the station, police arrested appellant on outstanding bench warrants for drug and petty larceny charges pending in Greece, New York, a suburb of Rochester.

At Detective Gordon's request, Rochester police spoke briefly with appellant about the Charleston murder after obtaining a waiver of his Miranda rights. Appellant denied being in Charleston at the time of the murder. Appellant was then asked and consented to take a polygraph test. He was again given Miranda warnings before the polygraph test was administered. The polygraph indicated deception.[2]

After receiving the results of the polygraph, Detective Gordon flew to Rochester, arriving later that evening. Detective Gordon questioned appellant along with two Rochester police officers. Appellant admitted his involvement in the robbery of the Citgo and identified his accomplice, Lanard Vanderhorst, in a photo line-up.

Appellant's statement indicates he and Vanderhorst went to the Citgo station together. Vanderhorst asked appellant to go into the store to see if anyone was in there, which appellant did. Appellant came out of the store and reported to Vanderhorst that the only person in the store was the cashier. Vanderhorst told appellant to wait outside while he went into the store. Vanderhorst was in the store a few minutes when appellant heard a single gun shot. Appellant ran away. He told police he did not receive any money from the robbery and

---

2. No evidence regarding the polygraph was admitted at trial.

he did not know Vanderhorst was going to rob the station until he heard the shot.

Appellant's statement was admitted at trial and a witness placed appellant at the scene of the murder.

## ISSUE

Does New York state law apply to suppress appellant's statement?

## DISCUSSION

Appellant moved to suppress his statement because he had counsel on the pending New York charges for which he was detained [3] and, under New York state law, police could not question him regarding the unrelated murder charge without the presence of counsel. The trial judge applied a conflict of laws analysis and denied the motion to suppress under South Carolina state law. Appellant contends this was error.

The State concedes that under New York state law, appellant's statement would be subject to suppression under *People v. Rogers*, 48 N.Y.2d 167, 422 N.Y.S.2d 18, 397 N.E.2d 709 (1979), which provides that a defendant represented by counsel on the charge on which he is held in custody cannot be questioned on *any* matter, even an unrelated one.[4] South

---

3. New York counsel was appointed for appellant on December 31, 1996, shortly after his arrest on the New York drug and petty larceny charges. Bench warrants were issued on these charges when appellant failed to appear at a subsequent hearing on February 3, 1997.

4. It is not clear to us that the rule enunciated in *Rogers* would result in suppression in this case. Although New York's highest court has recently reiterated the rule in *Rogers, see People v. Burdo*, 91 N.Y.2d 146, 667 N.Y.S.2d 970, 690 N.E.2d 854 (1997), it has also refused to apply *Rogers* on facts similar to those here. *See People v. Bing*, 76 N.Y.2d 331, 559 N.Y.S.2d 474, 558 N.E.2d 1011 (1990) (distinguishing *Rogers* and holding that where no Fifth Amendment right to counsel was invoked, defendants in custody on bench warrants for other charges could be questioned on unrelated charges even though right to counsel had attached on custodial charges); *see also Burdo, supra* (Wesley, J. dissenting) (*Rogers* rule applies only where defendant has invoked Fifth Amendment right to counsel on custodial charges). Further, *Burdo* may be distinguishable because there the police had actual knowledge that the defendant was represented by counsel. Here,

Carolina, on the other hand, follows the federal constitutional rule that the Sixth Amendment right to counsel is offense-specific; the mere fact counsel was appointed in one matter does not invoke the right to counsel in an unrelated matter. *State v. George,* 323 S.C. 496, 476 S.E.2d 903 (1996), *citing McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *see also Texas v. Cobb,* 532 U.S. 162, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001) (reaffirming narrow application of rule in *McNeil*). We hold that South Carolina law, and not New York law, determines the suppression issue in this case.

█ Most courts facing "conflict of laws" situations in the context of suppression issues analyze whether suppression under the particular facts of the case would further the purpose of the exclusionary rule. *See Pooley v. State,* 705 P.2d 1293 (Alaska Ct.App.1985); *People v. Blair,* 25 Cal.3d 640, 159 Cal.Rptr. 818, 602 P.2d 738 (1979); *People v. Porter,* 742 P.2d 922 (Colo.1987); *State v. Bridges,* 83 Hawai'i 187, 925 P.2d 357 (1996); *State v. Grissom,* 251 Kan. 851, 840 P.2d 1142 (1992); *People v. Benson,* 88 A.D.2d 229, 454 N.Y.S.2d 155 (1982).[5] The main purpose of the exclusionary rule is deterrence of police misconduct. *State v. Sachs,* 264 S.C. 541, 565, 216 S.E.2d 501, 514 (1975) ("Exclusion should be applied only where deterrence is clearly subserved."). Accordingly, the question here is whether suppressing appellant's statement would deter police misconduct.

In this case, South Carolina police participated in an out-of-state interrogation that would have been illegal under the laws of New York but not the laws of South Carolina. South Carolina officers procured the help of New York officers in conducting the interrogation and justifiably relied on them for

police denied they knew appellant had counsel on the pending New York charges. In any event, since the State has conceded New York law requires suppression in this case, we assume it does.

5. Although some courts have applied a conflicts of law analysis similar to that used in civil cases to determine whether the law of the forum or the law of the situs applies, this approach has been widely criticized as an oversimplified analysis in the criminal context. *See State v. Bridges, supra,* for extensive discussion; *see also* John Bernard Corr, *Criminal Procedure and the Conflict of Laws,* 73 GEORGETOWN L.J. 1217 (1985).

knowledge of the laws of that state. The officers questioning appellant had no actual knowledge he was represented by counsel on other charges and there is no evidence officers knowingly conducted the interrogation in violation of New York law. We find suppression in this case would not effectively deter misconduct by South Carolina police officers.

Further, our State interest in deterring the conduct of out-of-state police officers, who should have known the law of their own state and acted in accordance therewith, seems minimal at best. Suppression in South Carolina would most likely not have a significant impact on police conduct in New York. *See People v. Porter*, 742 P.2d at 925 (observing that "the slight increment in deterrence achieved by suppressing the evidence in another jurisdiction" is not likely to have any effect on deterring police from future misconduct). Under a deterrence analysis, we find no error in the trial judge's refusal to suppress appellant's statement.

Finally, we reject appellant's suggestion that principles of "comity" dictate a different result in this case. The spirit of comity does not require that a nonresident be allowed a remedy which State law denies to our own citizens. *Peterson v. Peterson*, 333 S.C. 538, 544, 510 S.E.2d 426, 429 (Ct.App. 1998). Accordingly, we decline to invoke New York state law to suppress appellant's statement.[6]

Appellant's remaining issue is without merit and we dispose of it under Rule 220(b), SCACR. *See State v. Portee*, 122 S.C. 298, 115 S.E. 238 (1922) (charge on malice implied from use of a deadly weapon was not a charge on the facts because charge indicated it was for jury to decide whether a deadly weapon had in fact been used).

**AFFIRMED.**

TOAL, C.J., and WALLER, BURNETT and PLEICONES, JJ., concur.

---

6. We note that New York concurs with us in this regard since that state has refused to apply another state's law in determining whether a defendant's statement should have been suppressed. *See People v. Benson*, 88 A.D.2d 229, 454 N.Y.S.2d 155 (1982).