# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Rashawn Vertez Carter, Petitioner.

Appellate Case No. 2023-000632

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Aiken County
Doyet A. Early, III, Circuit Court Judge

---

Opinion No. 28257
Heard October 30, 2024 – Filed January 29, 2025

---

## AFFIRMED

---

Appellate Defender David Alexander, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant Attorney General Joshua Abraham Edwards, both of Columbia; and Solicitor John William Weeks, of Aiken, all for Respondent.

---

**JUSTICE FEW:** Rashawn Vertez Carter contends law enforcement officers violated his federal and state constitutional rights by not getting a search warrant before obtaining his real-time, cell-site location information from his cell-service

provider for the purpose of tracking him down after he became a suspect in a violent home invasion. We affirm Carter's convictions for burglary, armed robbery, kidnapping, and illegal possession of a weapon because—even if there was a constitutional violation, which we do not address—the officers clearly acted in good faith reliance on a federal statute that specifically permitted their actions. Thus, under the good-faith exception to the exclusionary rule, there was no error in refusing to suppress the evidence obtained through the use of Carter's real-time, cell-site location information.

## I.        Facts and Procedural History

The court of appeals described in great detail the events preceding and during the commission of the crimes. *State v. Carter*, 438 S.C. 463, 466-70, 884 S.E.2d 195, 196-98 (Ct. App. 2022). Those facts in summary are that Carter and several associates spent the evening of May 8, 2015, riding around in Aiken, South Carolina, and Augusta, Georgia, planning a home invasion and robbery. In the early morning hours of May 9, acting on their plan, they sent a decoy to drug dealer Melvin Chandler's "trap house" in Aiken County so the decoy could alert the other associates when Chandler was sufficiently distracted for them to invade and rob Chandler's "stash house."[1] Chandler's stash house was his girlfriend's apartment. When the decoy gave the signal, Carter and two others burglarized the apartment, kidnapped and robbed the girlfriend at gunpoint, and allegedly sexually assaulted her. The robbery began around 5:03 a.m. Carter and one associate fled the apartment around 5:16 a.m. after one of Chandler's associates—having been alerted the robbery was in progress—approached the back door of the apartment and shot and killed Carter's other associate who was still inside.

The narrow set of facts important to the issue we address in this case occurred in the hours after the crimes were complete when law enforcement officers were attempting to track down the suspects. The first 9-1-1 call came in at 5:24 a.m. Over the next few hours, officers received cell phone numbers for several people they learned may have been involved in the crimes. They eventually determined one of the numbers belonged to Carter and that T-Mobile was his cell-service provider. The record does not indicate the precise times at which these events occurred. "Prior to lunchtime," however, as Aiken Department of Public Safety Detective Jeremy Hembree described it, Hembree called T-Mobile at what he knew as the "law

---

[1] As one officer explained, "a trap house . . . is almost like a storefront . . . where a lot of narcotics traffickers will sell their product," whereas "the stash house is . . . where they . . . keep the money" and more drugs.

enforcement contact" number. During that call, Hembree explained why he needed Carter's real-time, cell-site location information. The T-Mobile representative then provided Hembree with an "Exigent Circumstance Request Form." The form stated section 2702 of the federal Stored Communications Act—18 U.S.C. § 2702— authorized the disclosure of customer records. Hembree filled out the form as follows,

> On 05/09/2015 the Aiken Department Public Safety responded to a home invasion in which shots were fired. Upon arrival a male was located with a gunshot wound to the head. The investigation has provided us with a telephone number for an unknown individual who was involved in the incident. The male located with the gunshot wound has seen [sic] deceased as a result of the gunshot.

Hembree then submitted the form—which contained the boilerplate representation, "The urgency of the situation (and/or other factors) renders it unfeasible to obtain a search warrant"—to T-Mobile.

T-Mobile began providing law enforcement officers with Carter's real-time, cell-site location information at 4:40 p.m., showing Carter's cell phone "pinged to a location in Batesburg, South Carolina." Using T-Mobile's continuing disclosure of information, officers located Carter a few hours later at an apartment complex in Columbia and conducted a brief interview. After the interview in Columbia, officers transported Carter, with his consent, to the Aiken Department of Public Safety for a more thorough interview where he made incriminating statements regarding his involvement in the crimes.

At trial, Carter moved to suppress evidence obtained during his interviews in Columbia and Aiken. Carter argued obtaining his real-time, cell-site location information without a search warrant was a violation of the Fourth Amendment to the Constitution of the United States and article I, section 10 of the South Carolina Constitution.[2] The trial court denied Carter's motion, determining the limited information gathered to locate Carter was not a search under either constitution. The

---

[2] Carter did not argue to the trial court that obtaining his real-time, cell-site location information without a search warrant violated the "unreasonable invasions of privacy" provision in article I, section 10.

jury convicted Carter of burglary, armed robbery, kidnapping, possession of a weapon during the commission of a violent crime, and possession of a firearm by a person convicted of a violent felony. The jury found Carter not guilty of the alleged sexual assault.

Carter appealed to the court of appeals, which affirmed. The court of appeals did not specifically address whether a search occurred, but held the exigent circumstances exception to the warrant requirement applied, justifying the officers obtaining Carter's real-time, cell-site location information without a warrant. *Carter*, 438 S.C. at 471, 884 S.E.2d at 199. As an alternative ground for affirming, the court of appeals found the good-faith exception to the exclusionary rule applied. 438 S.C. at 472 n.6, 884 S.E.2d at 199 n.6. We granted Carter's petition for a writ of certiorari to review the court of appeals' decision.

## II.    Analysis

Ordinarily, we would begin our analysis of a question of this type by considering whether a search occurred, and if we found it did, we would then consider whether an exception to the warrant requirement applied. If a search occurred and no exception to the warrant requirement applied, we would then consider whether to apply the exclusionary rule. We find no fault in the trial court's choice to resolve Carter's suppression motion on the search question, nor in the court of appeals' choice to decide the appeal primarily by applying the exigent circumstances exception to the warrant requirement. While both courts appear to have engaged in sound analysis, we need not decide whether they made the correct ruling. Instead, we take a different approach because provisions of the federal Stored Communications Act make it irrefutably clear that the good-faith exception to the exclusionary rule applies, such that even if an unconstitutional search occurred, we would not sanction the "harsh medicine" of excluding the evidence obtained through that search. *See State v. Sachs*, 264 S.C. 541, 566, 216 S.E.2d 501, 514 (1975) ("The exclusionary rule is harsh medicine.").

When police officers "act with an objectively 'reasonable good-faith belief' that their conduct is lawful," trial courts will not exclude evidence seized as a result of that conduct, even though it later turns out the conduct violated the constitution. *Davis v. United States*, 564 U.S. 229, 238, 131 S. Ct. 2419, 2427-28, 180 L. Ed. 2d 285, 295 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 909, 104 S. Ct. 3405, 3413, 82 L. Ed. 2d 677, 689 (1984)). As the *Davis* Court explained, "the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement." 564 U.S. at 246, 131 S. Ct. at 2432, 180 L. Ed. 2d at 300. In *Sachs* and subsequent cases, this Court

has permitted exclusion "only where deterrence is clearly subserved." *Sachs*, 264 S.C. at 566, 216 S.E.2d at 514; *see also State v. Harvin*, 345 S.C. 190, 194, 547 S.E.2d 497, 500 (2001) (stating "the question" as to applying the exclusionary rule "is whether suppressing appellant's statement would deter police misconduct"), *overruled in part on other grounds by State v. Burdette*, 427 S.C. 490, 504 n.3, 832 S.E.2d 575, 583 n.3 (2019). As *Davis* made clear, however, when the police act in good faith, "the deterrence rationale loses much of its force." 564 U.S. at 238, 131 S. Ct. at 2427-28, 180 L. Ed. 2d at 295 (internal quotation marks omitted) (citation omitted). As this Court has stated, "Where there is no misconduct" by the police, there is "no deterrent purpose to be served," and there will be no "suppression of the evidence." *State v. Adams*, 409 S.C. 641, 653, 763 S.E.2d 341, 348 (2014).

In this case, subsection 2702(c)(4) of the federal Stored Communications Act specifically allows cell-service providers to release customer records like those T-Mobile released here "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." 18 U.S.C. § 2702(c)(4). As contemplated by subsection 2702(c)(4), officers investigating Carter's crimes explained the reasons they were requesting the information, and T-Mobile chose to provide Carter's location information. The "Exigent Circumstance Request Form" officers used to obtain Carter's location information specifically stated the request was made pursuant to section 2702 of the Stored Communications Act. The officers acted with "an objectively reasonable good-faith belief that their conduct [was] lawful" by relying on a valid federal statute. *Davis*, 564 U.S. at 238, 131 S. Ct. at 2427, 180 L. Ed. 2d 295 (internal quotation marks omitted) (citation omitted). We join numerous other courts in holding the good-faith exception to the exclusionary rule forecloses suppression when officers acted pursuant to this explicit federal statutory authority in obtaining real-time, cell-site location information. *See, e.g.*, *United States v. Rosario*, 5 F.4th 706, 712 (7th Cir. 2021) ("In our view, the record demonstrates that the officers relied on § 2702(c)(4) of the Stored Communications Act in good faith."); *United States v. Hammond*, 996 F.3d 374, 392-93 (7th Cir. 2021) (holding evidence collected based on law enforcement officers' good-faith reliance on subsection 2702(c)(4) should not be suppressed); *United States v. Takai*, 943 F. Supp. 2d 1315, 1324 (D. Utah 2013) (holding the good-faith exception to the exclusionary rule applied when law enforcement officers relied on subsection 2702(c)(4) of the Stored Communications Act to obtain real-time, cell-site location information); *United States v. Caraballo*, 963 F. Supp. 2d 341, 365-66 (D. Vt. 2013) (denying the defendant's motion to suppress evidence obtained from the use of real-time, cell-site location information because of law enforcement officers' good-faith reliance on subsection 2702(c)(4) of the Stored Communications Act). Thus,

evidence obtained from the use of Carter's real-time, cell-site location should not have been suppressed.

### III.    Conclusion

For the reasons explained above, Carter's convictions are affirmed.

**AFFIRMED.**

**KITTREDGE, C.J., JAMES, HILL and VERDIN, JJ., concur.**