664 S.E.2d 465

The **STATE**, Respondent,

v.

**Michael LIGHT, Petitioner.**

No. 26519.

Supreme Court of South Carolina.

Heard May 7, 2008.

Decided July 14, 2008.

Deputy Chief Appellate Defender for Capital Appeals Robert M. Dudek, of the South Carolina Commission on Indigent Defense, of Columbia, for petitioner.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, of Columbia; and Solicitor Donald V. Myers, of Lexington, for respondent.

Justice MOORE.

Petitioner was convicted of murder and grand larceny. He was sentenced to imprisonment terms of thirty years for murder and five years for grand larceny. The Court of Appeals affirmed. *State v. Light*, 363 S.C. 325, 610 S.E.2d 504 (Ct.App.2005). We now reverse.

## FACTS

Petitioner was arrested during a traffic stop in Texas. During the course of the arrest, Texas authorities discovered petitioner's girlfriend, Priscilla Davis (Davis), was missing, and questioned petitioner about her disappearance. Petitioner admitting killing Davis. In his statement, petitioner told Texas authorities that he emerged from the bathroom in his home to find Davis holding a long strand of brown hair and his .22 rifle.[1] Davis accused petitioner of having another woman in the house, which petitioner denied. He stated in a recorded statement:

She went to acting a fool and called me a liar. And the only thing I could think of, I was—I tried to distract her. I remember swinging my left arm, I think it was, to get the rifle out of her hand. When I did, all I can tell you, it went off. Honestly, I didn't even think it hit her.

Then she fell. I thought it might have just grazed her in the shoulder. So I ran out the back door to go get help because I don't have a telephone. I ran back to her and she wasn't breathing, and I just panicked. I didn't think nobody would believe me. So the only thing I did, I just put her in the trunk of the car; and I just took off. I just drove and kept driving.

The Texas Ranger who interviewed petitioner testified petitioner did not claim that Davis pointed the rifle at him or that she threatened to shoot him. He also testified petitioner later altered his story, admitting he took the rifle from Davis before it was fired. The Ranger testified petitioner told him "the rifle was in my hand when it went off, I will not deny that. I took it from her. It was either her or me. I could have run, like I told them; but I didn't really think about it." In his statement, petitioner stated they were standing face to face when the shooting occurred.

The State presented evidence from a firearms expert, who testified there was no gunshot residue around the entrance wound in Davis' chest.[2] The expert testified he believed the

---

1. Petitioner always kept this rifle loaded.

2. Petitioner disposed of Davis' body in Alabama on his way to Texas. He led police to her body after he admitted his involvement in Davis' death.

shot was consistent with a distant shot of about thirty to fifty inches. The State's pathologist testified the angle of the bullet wound through Davis' body made it likely Davis was sitting or kneeling when shot. He testified the wound was consistent with a purposeful shooting and inconsistent with an accidental shooting.

After the State finished its case in chief, the State argued petitioner was not entitled to a self-defense charge because there was no evidence petitioner was in danger of losing his life or of sustaining serious bodily injury. Petitioner argued that, at the time of the shooting, he was still "under the influence of the initial aggressive act he contends was committed by the victim." The trial judge delayed his ruling until after petitioner presented his case.

At trial, petitioner testified Davis had been acting jealous and following him for several weeks before the incident. Petitioner made this same claim in his earlier statement to police. He testified she told him that if she ever caught him with another woman, "it's going to be messy." Petitioner testified the morning of the incident [3] he left to get breakfast for Davis. After returning, he came out of the bathroom and found her holding a long brown hair [4] and his .22 rifle, stating she believed petitioner had another woman in the house. He testified:

> She was pointing [the gun] at me and screaming and hollering and accusing me as usual. I asked her, "What the heck is wrong with you, you know? There has ... not been another woman in this house."

> She just kept on and on, screaming and screaming at me. I was afraid she was going to shoot me. So during the screaming—and my living room is very small. Y'all have

---

3. The night before, petitioner and Davis had been at a bar until approximately 3:30 a.m. There was testimony they were not arguing or fighting and were dancing to slow songs. There was also testimony that, when Davis and petitioner left, petitioner had Davis, who was crying, by the arm.

4. The brown hair and the lubricant bottle that the hair was allegedly found on were not recovered when petitioner's house was processed for evidence.

seen that. Between the two couches is where this happened.

The only thing I remember, I did try—I took my left hand to knock it away, try to push it away from me. Than [sic] after I jerked it away from her, I did stumble back several feet, you know, after jerking it. The weapon discharged but it was not intentionally [sic].

Q. Was that in your hands?

A. It was in my hands. I do not deny that.

Q. And you pulled the trigger?

A. Not intentionally but I had to.

[Solicitor] Swarat: I'm sorry, I couldn't hear that. "I did not intentionally but I had to." Was that what he said?

[Petitioner]: I said I didn't intentionally pull the trigger.

[Counsel for petitioner]: He had to have pulled the trigger, I think is what he said.

Q. No one else pulled the trigger?

A. There was nobody else holding the gun. I mean, let's be logical. It was just me and her there. But after I jerked the weapon out of her hand it [fired]. . . .

At trial, petitioner testified he and Davis were not standing face to face. He stated, "when you are arguing like that . . . There is a lot of movement going on . . . . she was crouched down."

Petitioner further stated, "After we fought over the rifle, jerked it away from her, still screaming and hollering at each other, I think she stopped—scooted down some, . . . The rifle did go off in our argument."

Following the conclusion of the trial, the trial judge denied petitioner's request to charge self-defense. Petitioner also requested a charge on involuntary manslaughter. Petitioner argued that if the jury believed petitioner wrestled the rifle away from Davis and subsequently wielded it in a reckless fashion, there would be a sufficient basis for charging involuntary manslaughter. The trial judge refused, stating he did not see any indication of recklessness in petitioner's actions. The trial judge charged the jury on murder, voluntary manslaughter, and accident. The jury found petitioner guilty of murder.

## ISSUES

I. Did the trial court err by denying petitioner's request for a jury instruction on involuntary manslaughter?

II. Did the trial court err by finding petitioner was not entitled to a jury instruction on self-defense?

## DISCUSSION

### I. Involuntary manslaughter

The Court of Appeals found the trial court properly refused to charge involuntary manslaughter. The court stated there was no evidence petitioner handled the gun with reckless disregard for the safety of others.[5] *See State v. Reese,* 370 S.C. 31, 633 S.E.2d 898 (2006) (involuntary manslaughter is the unintentional killing of another without malice and while engaged in either: (1) an unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) a lawful act with reckless disregard for the safety of others).

Petitioner argues the Court of Appeals erred by finding he was not entitled to an involuntary manslaughter instruction. He relies on the cases of *State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999), and *State v. Crosby,* 355 S.C. 47, 584 S.E.2d 110 (2003), for support.

In *State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999), Burriss was attacked by the victim and another man. After being pushed to the ground, Burriss drew a gun from his pocket and fired twice into the ground, causing both assailants to back away. As Burriss was attempting to get off the ground, one of the assailants advanced towards Burriss, who was separated from his gun. Burriss grabbed the gun and it

---

**5.** The Court of Appeals noted petitioner argued in his statement of issues that the gun discharged while petitioner and Davis were struggling over the gun and that, as a result, it was "a classic case of involuntary manslaughter." The court held an involuntary manslaughter charge would have been warranted if there was evidence the gun discharged while petitioner and Davis were struggling over it. However, the court noted petitioner failed to argue the gun discharged during the course of the struggle in his brief; therefore, it held petitioner abandoned the issue on appeal. We disagree that petitioner abandoned his argument. Throughout his brief, petitioner discussed the struggle for the gun.

accidentally fired, killing one of the assailants. We held Burriss was entitled to a charge on involuntary manslaughter because the evidence supported a finding that he was lawfully armed in self-defense at the time the fatal shot occurred and there was evidence he handled the loaded gun in a negligent manner.

In *State v. Crosby*, 355 S.C. 47, 584 S.E.2d 110 (2003), Crosby claimed he was trying to break up a fight between three women, one of whom was the victim's girlfriend. Crosby claimed the victim told him not to put his hands on his girlfriend and then charged at Crosby with his hands behind his back. Crosby then pulled a gun out of his pocket and closed his eyes and pulled the trigger. Crosby claimed he did not realize he had pulled the trigger. We held Crosby was entitled to an involuntary manslaughter charge because there was ample evidence from which the jury could have inferred Crosby did not intentionally discharge the weapon.

■ Although petitioner had inconsistent stories, we find he was entitled to a charge on involuntary manslaughter. The Court of Appeals distinguished *Burriss* and *Crosby* by finding that, although petitioner's statements support a finding he was lawfully armed in self-defense at the time of the shooting, there is no evidence of recklessness as required to warrant an involuntary manslaughter charge. The Court of Appeals correctly found petitioner was lawfully armed in self-defense [6] at the time of the shooting because, according to his testimony, petitioner took the loaded gun from Davis who was threatening him with it. There was also evidence petitioner recklessly handled the gun because, according to his testimony, it fired almost immediately after he took possession of it. As specifically stated in *Burriss*, the negligent handling of a loaded gun will support a finding of involuntary manslaughter. *See also State v. White*, 253 S.C. 475, 171 S.E.2d 712, *cert. denied*, 396 U.S. 987, 90 S.Ct. 482, 24 L.Ed.2d 451 (1969) (same). Further,

---

6. The *Burriss* court noted that there is a difference between being lawfully *armed* in self-defense and *acting* in self-defense. *Burriss*, 334 S.C. at 265, n. 10, 513 S.E.2d at 109, n. 10. At this point in the analysis, we are concerned only with whether petitioner had a right to be armed for purposes of determining whether he was engaged in a lawful act, *i.e.* was lawfully armed, and not whether he actually acted in self-defense when the shooting occurred.

the fact petitioner and Davis were struggling over the weapon is sufficient evidence to support an involuntary manslaughter charge to the jury. *Casey v. State,* 305 S.C. 445, 409 S.E.2d 391 (1991) (evidence of a struggle between a defendant and a victim over a weapon is sufficient for submission of an involuntary manslaughter instruction to the jury). Accordingly, there was evidence to support a charge of involuntary manslaughter and, therefore, the trial court should have so charged the jury. *See State v. Reese,* 370 S.C. 31, 633 S.E.2d 898 (2006) (if there is any evidence warranting a charge on involuntary manslaughter, then the charge must be given); *State v. Hill,* 315 S.C. 260, 433 S.E.2d 848 (1993) (trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence).

## II.  Self-defense

The Court of Appeals noted that petitioner testified he had disarmed Davis and had taken possession of the rifle when the shot was fired. Under those facts, the court held Davis no longer posed any threat to petitioner and he could not have reasonably believed she did. The court held the evidence demonstrated petitioner did not have the right to use deadly force in self-defense and the trial judge correctly refused to charge the jury on self-defense.

A self-defense charge is not required unless it is supported by the evidence. *State v. Goodson,* 312 S.C. 278, 440 S.E.2d 370 (1994). To establish self-defense in South Carolina, four elements must be present: (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, the defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the dan-

ger. *State v. Slater*, 373 S.C. 66, 644 S.E.2d 50 (2007). If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial judge's refusal to do so is reversible error. *Id.*

■ We find petitioner was entitled to a self-defense charge. In a statement to police, petitioner indicated he took the gun from Davis and that it was "either her or me." This statement indicates he believed he was in imminent danger of losing his life. Also, petitioner testified that in the preceding weeks, Davis had been acting jealous, following him, and had told him that if she ever caught him with another woman it was "going to be messy." This evidence suggested that petitioner was reasonable in his belief that it was either Davis' or his life at stake when the struggle for the gun began. Accordingly, the trial court erred by failing to charge self-defense given there was evidence to support the charge. *See State v. Burkhart*, 350 S.C. 252, 565 S.E.2d 298 (2002) (if there is any evidence in the record to support self-defense, the issue should be submitted to the jury).

■ A past holding of this Court seems to indicate that, where a defendant is claiming self-defense, as petitioner is here, involuntary manslaughter may not be charged. In *State v. Pickens*, 320 S.C. 528, 466 S.E.2d 364 (1996),[7] we held that where a defendant admits he intentionally shot his gun, but that he did so while acting lawfully but recklessly in defending himself, he is not entitled to a charge of involuntary manslaughter. However, a self-defense charge and an involuntary manslaughter charge are not mutually exclusive, as long as there is any evidence to support both charges. *See State v. Crosby*, 355 S.C. 47, 584 S.E.2d 110 (2003) (improper to hold that any evidence of an intentional shooting negates evidence from which any other inference may be drawn); *Casey v. State*, 305 S.C. 445, 409 S.E.2d 391 (1991) (error by trial court in not charging involuntary manslaughter, even though the trial court charged murder, voluntary manslaughter, accident, and self-defense); *State v. Turbeville*, 275 S.C. 534, 273 S.E.2d

---

7. In *Pickens*, Pickens and a co-defendant began shooting in self-defense when a group of ten to twelve people rushed them outside of a Waffle House.

764 (1981) (defendant charged with involuntary manslaughter was not entitled to self-defense charge because there was no testimony concerning self-defense in the trial record; indicating the charge would be appropriate if there was testimony concerning self-defense). When there is a factual issue as to whether the shooting was committed intentionally in self-defense or was committed unintentionally, then the defendant is entitled to both charges as there is "any evidence" to support each charge. When there is evidence of both, as in this case, we find the jury is entitled to resolve the question of how the shooting actually occurred.

## CONCLUSION

We find that, under the particular facts of this case, petitioner was entitled to the charges of self-defense and involuntary manslaughter. Accordingly, the decision of the Court of Appeals is

**REVERSED.**

WALLER, PLEICONES and BEATTY, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL.

I respectfully dissent. I would affirm the conviction and hold that the trial court properly refused to charge both involuntary manslaughter and self-defense.

The majority finds that Petitioner was entitled to an involuntary manslaughter charge because there was evidence that Petitioner recklessly handled the gun and that Petitioner and the victim struggled over the gun. In my opinion, the evidence does not support these findings. According to Petitioner's own testimony, the gun discharged after he retrieved it from the victim, while the gun was in his possession, and as he stumbled backwards. In my view, this testimony is not evidence that Petitioner recklessly handled the gun or that the gun fired during the struggle. *Compare State v. White*, 253 S.C. 475, 171 S.E.2d 712 (1969) (holding that the defendant's testimony regarding the shooting provided sufficient evidence to warrant an inference that the victim's death was caused by the negligent handling of a loaded pistol); *Tisdale v. State*, 378

S.C. 122, 662 S.E.2d 410 (2008) (Shearouse Adv. Sh. No. 22 at 21) (finding that the defendant's testimony that the gun discharged while he and the victim struggled over the gun supported an involuntary manslaughter charge).  Rather, I believe that this testimony presents a standard example of accident, on which the trial court properly instructed the jury. *See State v. Burriss*, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999) (holding that a defendant is entitled to a charge on accident where there is evidence that he armed himself in self-defense but the shooting occurs accidentally); *State v. Goodson*, 312 S.C. 278, 280 440 S.E.2d 370, 372 (1994) (recognizing that for a homicide to be excusable on the ground of accident, it must be shown that the killing was unintentional, that the defendant was acting lawfully, and that due care was exercised in the handling of the weapon).[8]  Accordingly, I would hold that there is no evidence to support an involuntary manslaughter charge.

In my opinion, the majority also errs in holding that Petitioner was entitled to a self-defense charge.  Even assuming that Petitioner reasonably believed that he was in imminent danger when the victim first confronted him with the gun due to the victim's previous threats, Petitioner testified that he "jerked" the gun away from the victim, the victim was "crouched down" when she was shot, and that he did not intentionally pull the trigger.  Thus, in my view, Petitioner was neither in imminent danger nor did he believe he was in imminent danger at the time he shot the victim.  I would therefore hold that the trial court properly refused to charge self-defense.  *See State v. Bruno*, 322 S.C. 534, 536, 473 S.E.2d 450, 452 (1996) (holding that the defendant was not entitled to a self-defense charge where he presented no evidence that he believed that he was in imminent danger when he shot the victim).

While I agree with the majority that a self-defense charge and involuntary manslaughter charge are not necessarily mutually exclusive, there must be some evidence in the record to support the charges, and in my opinion, no evidence in the record supports either charge in this case.  For these reasons,

---

8. I agree with the majority insofar as I believe that Petitioner had the right to take the weapon away from the victim.

I would hold that the trial court properly refused to give an involuntary manslaughter charge and a self-defense charge.