757 S.E.2d 533

**The STATE, Respondent,**

v.

**Antonio SCOTT, Appellant.**

Appellate Case No. 2011–205448.

No. 5199.

Court of Appeals of South Carolina.

Heard Jan. 8, 2014.

Decided Feb. 19, 2014.

Rehearing Denied May 2, 2014.

Certiorari Granted Sept. 11, 2014.

Appellate Defender Benjamin John Tripp, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General J. Anthony Mabry, all of Columbia; and Solicitor Isaac McDuffie Stone, III, of Bluffton, for Respondent.

FEW, C.J.

A jury convicted Antonio Scott for the murder of Cynthia Nelson. Scott asserts the trial court erred by not charging involuntary manslaughter because under his version of the facts, he unintentionally caused Nelson's death when he lawfully but recklessly performed a martial arts move in self-defense. We find no basis to conclude Scott acted recklessly in defending himself because the circumstances Scott alleges to be reckless are the same circumstances that justified his use of force. We affirm.

## I. Facts and Procedural History

On March 20, 2011, first responders from Jasper County Fire and Rescue arrived at the home of Scott's sister to investigate a "possible stabbing." They found Nelson "slumped over" on the couch with "a significant amount of blood on her clothing, emanating from her neck." Upon inspecting the wound, one of the first responders concluded "an object or some type of weapon was ... put into [the left side of] her neck." Paramedics transported Nelson to Coastal Carolina Medical Center, where she later died due to blood loss.

The State indicted Scott for murder. At trial, the State's witnesses established the events leading up to Nelson's death.

Nelson and her daughter Akera—who has a child with Scott—drove to Scott's sister's apartment to drop off the child. Nelson remained in the car while Akera took the child inside. When Akera walked in, she and Scott began arguing. "A minute later," Nelson walked into the apartment and began yelling at Scott.

Under the State's version of events, Scott had a knife in his hand when Akera walked in, and during the argument with Nelson, he stabbed Nelson in the neck with the knife. Scott's statement to police, however, described a different version of events.[1] Investigator Daniel Litchfield testified to what Scott told the police:

> [Scott] had an altercation, a verbal argument, with Cynthia Nelson. During this argument, he stated that Cynthia Nelson pulled something shiny and silver out of her pocket, went towards him, and he stepped to the side and did—a for lack of a better term, a martial arts move, pushing her elbow up, causing her to stab herself in the throat.

Dr. Lee Tormos, a forensic pathologist, performed Nelson's autopsy and testified to his findings. Initially, Dr. Tormos stated Nelson's stab wound was not "the result of an accident" and was "consistent with someone having a knife in their hand [and] striking someone." He further testified he had never "seen a wound like this that was self-inflicted," and stated, "It is not possible that this could be a self-inflicted wound." On cross-examination, however, Scott's attorney demonstrated a martial arts move similar to what Scott allegedly performed and asked Dr. Tormos whether this move could cause a person holding a knife to stab herself in the neck. Dr. Tormos admitted the stabbing "could have been an accident," and acknowledged "[i]t is very possible" Nelson's wounds were caused by a self-inflicted stab wound.

Scott requested the trial court charge self-defense and involuntary manslaughter. The court agreed to charge self-defense but expressed concerns with charging involuntary manslaughter. The court explained, "I honestly think that it has to be either murder or voluntary manslaughter or self-defense" because "I don't see how ... under any of the circumstances he could be criminally negligent" in defending

---

1. Scott did not testify at trial.

himself. Scott argued the martial arts move could be considered negligent, to which the court responded, "[t]hat would be purely self-defense," and "[Scott] should be acquitted" and not "convicted of involuntary manslaughter." The State agreed with the court's position, arguing a person cannot "act in self-defense in a criminally negligent way, because it is an intentional act."

The court instructed the jury on murder, voluntary manslaughter, and self-defense. The jury found Scott guilty of murder, and the court sentenced him to thirty years in prison.

## II. Involuntary Manslaughter

Involuntary manslaughter is defined as the unintentional killing of another without malice while engaged in (1) an unlawful activity not naturally tending to cause death or great bodily harm or (2) a lawful activity with reckless disregard for the safety of others. *State v. Smith*, 391 S.C. 408, 414, 706 S.E.2d 12, 15 (2011). Scott argues the trial court erred by not charging involuntary manslaughter because there was evidence he unintentionally caused Nelson's death while engaged in the lawful activity of self-defense with reckless disregard for her safety.[2] We find no basis to conclude Scott acted recklessly because if he was justified in defending himself with the martial arts move, there is no ground on which to find he did so recklessly. *See State v. Gibson*, 390 S.C. 347, 355–56, 701 S.E.2d 766, 770 (Ct.App.2010) ("The evidence presented at trial determines the law to be charged . . . .").

Scott premises his argument—that performing the martial arts move was reckless—on his belief that the "shiny and silver" object Nelson pulled from her pocket was a knife. He argues he exceeded the amount of justifiable force because the combination of his action and the presence of the knife created a danger to Nelson that could support a jury finding that he consciously disregarded the risk his conduct created. *See*

---

2. Scott asserts only that his conduct falls under the second definition of involuntary manslaughter. Thus, we do not address whether Scott was engaged in "an unlawful activity not naturally tending to cause death or great bodily harm" for the purposes of determining whether he was entitled to an involuntary manslaughter charge. *See id.* (addressing only the second definition of involuntary manslaughter when the defendant did not seek a charge under the first definition).

*State v. Brayboy*, 387 S.C. 174, 180, 691 S.E.2d 482, 485 (Ct.App.2010) ("Recklessness is a state of mind in which the actor is aware of his or her conduct, yet consciously disregards a risk which his or her conduct is creating." (citation omitted)). The argument is counterintuitive. If Nelson approached Scott in a manner that gave him a reasonable fear of imminent bodily harm, but she had no knife, Scott would be entitled to use a reasonable amount of force to defend himself. *See generally State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011) (providing a person may use reasonable force in defending himself when he "believed he was in imminent danger" and "a reasonable prudent man ... would have entertained the same belief" (citation omitted)). However, under Scott's version of the facts, in which Nelson approached Scott with a knife, the degree of force Scott was entitled to use increased, not decreased, based on the heightened threat posed by the knife. *See Douglas v. State*, 332 S.C. 67, 72, 504 S.E.2d 307, 309 (1998) (stating the law allows a defendant "the right to use as much force as required for his complete protection from loss of life or serious bodily harm" (citation omitted)). Thus, the circumstance Scott relies on to argue he recklessly exceeded justifiable force—Nelson's possession of a knife—actually justifies the use of more force. This is the basis on which the trial court refused to charge involuntary manslaughter, and we agree with the trial court's reasoning.

### III. *State v. Light*

Scott cites *State v. Light*, 378 S.C. 641, 651, 664 S.E.2d 465, 470 (2008), to support his argument. We find *Light* is inapplicable to this case because the supreme court's ruling in *Light* depended on the existence of evidence showing the defendant acted unintentionally. From that evidence, the court found the jury could infer the defendant acted recklessly. *Id.* Here, there is no evidence Scott acted unintentionally. Therefore, Scott's argument that we may find evidence of recklessness based on the reasoning of *Light* is misplaced.

In *Light*, the victim pulled a gun on the defendant. 378 S.C. at 645–46, 664 S.E.2d at 467. When the defendant "jerked the weapon out of [the victim's] hand, ... it fired." 378 S.C. at 646, 664 S.E.2d at 467. The defendant admitted he had possession of the gun "when it went off," 378 S.C. at

644, 664 S.E.2d at 466, but claimed "it was not intentional[ ]." 378 S.C. at 646, 664 S.E.2d at 467. The supreme court found there was evidence that the defendant "recklessly handled the gun because ... it fired almost immediately after he took possession of it." 378 S.C. at 648, 664 S.E.2d at 469.

The *Light* court's discussion of *State v. Pickens*, 320 S.C. 528, 466 S.E.2d 364 (1996), indicates the *Light* court relied on evidence that the defendant unintentionally fired the gun to find the defendant's conduct was reckless. In *Pickens*, the court held the defendant was not entitled to a charge of involuntary manslaughter when he "admit[ted] he intentionally shot his gun, but that he did so while acting lawfully but recklessly in defending himself." *Light*, 378 S.C. at 650, 664 S.E.2d at 470. The *Light* court clarified its holding in *Pickens*, stating,

[A] self-defense charge and an involuntary manslaughter charge are not mutually exclusive, as long as there is any evidence to support both charges. When there is a factual issue as to whether the shooting was committed intentionally in self-defense or was committed unintentionally, then the defendant is entitled to both charges as there is "any evidence" to support each charge.

378 S.C. at 650–51, 664 S.E.2d at 470 (internal citations omitted).

The evidence in *Light* that distinguished the case from *Pickens* was evidence that the defendant did not intentionally fire the gun.[3] *Light*, 378 S.C. at 648, 664 S.E.2d at 468–69. Thus, the *Light* court held an involuntary manslaughter charge was warranted because there was a factual issue as to whether the defendant fired the gun intentionally in self-defense, or unintentionally in the course of a struggle. 378 S.C. at 651, 664 S.E.2d at 470. Here, there is no evidence Scott acted unintentionally. Therefore, we find *Light* is inapplicable.

---

3. *See also State v. Burriss*, 334 S.C. 256, 265 n. 10, 513 S.E.2d 104, 109 n. 10 (1999) (*"Pickens* may be distinguished from this case because there we based our decision on the fact [the] defendant admitted he shot intentionally. Here, Appellant claimed the shooting was not intentional." (internal citation omitted)).

## IV. Conclusion

We find the trial court correctly refused to charge involuntary manslaughter. The decision of the trial court is **AFFIRMED**.

KONDUROS, J., concurs.

PIEPER, J., dissenting.

I respectfully dissent and would find the evidence in the record warrants an involuntary manslaughter charge. *See State v. Wharton*, 381 S.C. 209, 216, 672 S.E.2d 786, 789 (2009) ("If there is any evidence warranting a charge on involuntary manslaughter, then the charge must be given."). Accordingly, I would find the trial court erred by failing to charge involuntary manslaughter, and I would reverse and remand for a new trial.