# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Antonio Scott, Petitioner.

Appellate Case No. 2014-001124

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Jasper County
Carmen T. Mullen, Circuit Court Judge

---

Opinion No. 27571
Heard June 3, 2015 – Filed September 9, 2015

---

## AFFIRMED

---

Appellate Defender Benjamin John Tripp, of Columbia,
for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney
General John W. McIntosh, Senior Assistant Deputy
Attorney General Donald J. Zelenka, and Assistant
Attorney General Anthony Mabry, all of Columbia,  and
Solicitor Isaac McDuffie Stone, III, of Bluffton, for
Respondent.

---

**CHIEF JUSTICE TOAL:** Petitioner Antonio Scott was convicted of murder. On appeal, Scott argues that the court of appeals erred in finding that the evidence did not support a jury instruction on involuntary manslaughter, and thus, in upholding the trial court's failure to charge involuntary manslaughter. *State v. Scott*, 408 S.C. 21, 757 S.E.2d 533 (Ct. App. 2014). We affirm.

## FACTS/PROCEDURAL BACKGROUND

On March 19, 2011, Cynthia Nelson called the police and reported that Scott tried to break into her apartment. Scott was allegedly resentful of Cynthia's disapproval of Scott's relationship with her daughter, Akera. Scott departed Cynthia's apartment before the police arrived.

The following day, Scott attended a wake for his cousin in Ridgeland, South Carolina. At the wake, Scott told several people that he used a knife to threaten Cynthia's life the previous night. Scott stated that he was going to kill Cynthia the next time he saw her.

Later that day, Akera and Cynthia arrived at Scott's sister's apartment in Ridgeland to drop off Akera and Scott's child. Akera took the child into the apartment while Cynthia waited outside. When Akera walked inside, Scott stood with a knife in his hand and asked her, "Is this how you wanna [sic] do things?" and "You gonna [sic] let your mom come between us?" A short time later, Cynthia walked in and told Scott, "I'm tired of you beating on my daughter."[1] Cynthia and Scott then engaged in a physical altercation, during which Cynthia was stabbed in the neck.

Scott's sister called 911, and Scott initially attempted to apply pressure to Cynthia's wound. However, Scott fled when the police arrived, and the officers were unsuccessful in their attempts to locate Scott in the apartment complex. Cynthia later died from the wound.

Eventually, Scott contacted a detective in the Ridgeland Police Department and surrendered himself. Investigator Daniel Litchfield interviewed Scott at the police station. Scott told Investigator Litchfield that he engaged in a verbal altercation with Cynthia, during which Cynthia pulled "something shiny and silver out of her pocket" and stepped towards Scott. Scott stated that he then executed a

---

[1] At the time of the altercation, Scott was on probation for criminal domestic violence, second offense, and Akera was the victim.

"martial arts move, pushing her elbow up, [and] causing her to stab herself in the throat." Investigator Litchfield interviewed several other people in connection with the case and was not able to locate anyone who could corroborate Scott's story.[2]

Scott was indicted and tried for murder. At trial, Scott did not testify and rested without presenting any evidence. After excusing the jury, the trial judge indicated that she would instruct the jury on murder, voluntary manslaughter, and self-defense. However, the trial judge denied Scott's request to charge involuntary manslaughter.

Scott's counsel candidly admitted that he desired the involuntary manslaughter charge so as to avoid a compromise verdict of voluntary manslaughter. At no point during the charge conference did Scott's counsel ever specifically articulate what evidence supported an involuntary manslaughter charge, instead reiterating his fears of a compromise verdict.

After closing arguments, the trial court charged the jury on the law. The jury deliberated for a short time and found Scott guilty of murder. During sentencing, the State informed the trial court that Scott had a very extensive criminal history and was on probation for criminal domestic violence. The trial court noted Scott's history of violent crime and sentenced him to thirty years' imprisonment.

Scott appealed, contending that the trial court erred by failing to charge involuntary manslaughter. The court of appeals affirmed, *Scott*, 408 S.C. at 27, 757 S.E.2d at 536, and we granted Scott's petition for a writ of certiorari to review the court of appeals' decision.

## STANDARD OF REVIEW

"In criminal cases, this Court sits to review errors of law only and is bound by factual findings of the trial court unless an abuse of discretion is shown." *State v. Laney*, 367 S.C. 639, 643, 627 S.E.2d 726, 729 (2006) (citing *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001)). "An abuse of discretion occurs when

---

[2] The closest any eyewitness came to corroborating Scott's story was Scott's sister. She testified that she was present when the altercation occurred, and did not see a knife before or after the struggle. Rather, she stated that she saw Scott strike Cynthia, saw Cynthia fall to the couch, and saw blood pouring down the front of Cynthia's body. Scott's sister did not describe Scott making a martial arts move.

the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* at 643–44, 627 S.E.2d at 729 (citing *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000)). "The refusal to grant a requested jury charge that states a sound principle of law applicable to the case at hand is an error of law." *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 167 (2007) (citing *Clark v. Cantrell*, 339 S.C. 369, 390, 529 S.E.2d 528, 539 (2000)).

## ANALYSIS

Scott contends the court of appeals erred in determining there was no evidence to support a charge of involuntary manslaughter. We disagree.

"'The law to be charged to the jury is determined by the evidence presented at trial.'" *State v. Sams*, 410 S.C. 303, 308, 764 S.E.2d 511, 513 (2014) (quoting *State v. Hill*, 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993)). "The trial court is required to charge a jury on a lesser-included offense if there is evidence from which it could be inferred that the defendant committed the lesser, rather than the greater, offense." *Id.* (citations omitted). In determining whether the evidence requires a charge on a lesser-included offense, courts view the facts in the light most favorable to the defendant. *Id.* (citing *State v. Cole*, 338 S.C. 97, 101, 525 S.E.2d 511, 512–13 (2000)).

Involuntary manslaughter is a lesser-included offense of murder, and "is defined as the unintentional killing of another without malice while engaged in either (1) the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm, or (2) the doing of a lawful act with a reckless disregard for the safety of others." *Id.* at 309, 764 S.E.2d at 514 (citation omitted). Involuntary manslaughter requires a showing of criminal negligence, which "is defined as the reckless disregard of the safety of others." S.C. Code Ann. § 16-3-60 (2003). "'Recklessness is a state of mind in which the actor is aware of his or her conduct, yet consciously disregards a risk which his or her conduct is creating.'" *State v. Brayboy*, 387 S.C. 174, 180, 691 S.E.2d 482, 485 (Ct. App. 2010) (quoting *Pittman*, 373 S.C. at 571, 647 S.E.2d at 167).

Here, Scott asserts that his conduct falls under the second definition of involuntary manslaughter, claiming the evidence demonstrates that he unintentionally killed Cynthia while executing a martial arts move, and therefore that he must have recklessly disregarded the safety of others. However, the only evidence presented at trial that supports Scott's version of the facts is Investigator Litchfield's testimony that Scott told him Cynthia charged at him with a "shiny []

silver" object, at which point he executed a "martial arts move, pushing her elbow up, [and] causing her to stab herself in the throat." Scott did not testify, nor did he offer any evidence that he was criminally negligent in executing the martial arts move. To the contrary, Investigator Litchfield testified that Scott's father had a black belt in martial arts, and that he trained Scott. Thus, the only testimony regarding Scott's martial arts background suggests that his actions were anything but reckless, and that he intentionally caused Cynthia's death.

We acknowledge that under Scott's version of the facts, the evidence supported a self-defense instruction, which he received. However, on appeal, Scott attempts to argue that he was also entitled to an involuntary manslaughter instruction because the jury could have inferred that he acted recklessly in self-defense.[3] We recently rejected this argument in *State v. Sams*, wherein the defendant "argue[d] that he acted lawfully in self-defense, but that he perhaps acted excessively and recklessly in doing so." 410 S.C. at 314, 764 S.E.2d at 517. We found that argument "tantamount to imperfect self-defense," which is a doctrine that "South Carolina has not expressly adopted." *Id.* at 315, 764 S.E.2d at 517 (citations omitted). Moreover, we noted that "even if this Court were to accept the doctrine of imperfect self-defense, it is of no consequence to [the defendant's] proceeding as it would, at most, entitle him to an instruction on voluntary manslaughter, which he already received."[4] *Id.* at 316, 764 S.E.2d at 517 (citations omitted).

Simply put, Scott has not presented any evidence that he acted with reckless disregard for the safety of others. As the trial court noted, if the jury accepted Scott's version of the facts as true, he would be entitled to acquittal because the killing would have been justified. *See Robinson v. State*, 308 S.C. 74, 79, 417 S.E.2d 88, 91 (1992) ("Self-defense is a complete defense; if established, a jury must find that the defendant is not guilty." (citing *State v. Davis*, 282 S.C. 45, 46, 317 S.E.2d 452, 453 (1984) (per curiam))). Thus, we hold that the evidence did not warrant an involuntary manslaughter charge. *See State v. Smith*, 315 S.C. 547, 549, 446 S.E.2d 411, 413–14 (1994) ("The trial court may and should refuse to charge on a lesser-included offense where there is no evidence that the defendant

---

[3] *See State v. Light*, 378 S.C. 641, 650, 664 S.E.2d 465, 470 (2008) ("[A] self-defense charge and an involuntary manslaughter charge are not mutually exclusive, as long as there is any evidence to support both charges." (citations omitted)).

[4] Scott also received a jury instruction on voluntary manslaughter.

committed the lesser rather than the greater offense." (citation omitted)).

**CONCLUSION**

For the foregoing reasons, we affirm the court of appeals' decision.

**AFFIRMED.**

**BEATTY, HEARN, JJ., and Acting Justice Alison Renee Lee, concur. PLEICONES, J., dissenting in a separate opinion.**

**JUSTICE PLEICONES**:  I respectfully dissent and would reverse the decision of the Court of Appeals because I find, viewing the evidence in the light most favorable to petitioner, that there is "evidence from which it could be inferred that [he] committed" involuntary manslaughter.  *State v. Sams*, 410 S.C. 303, 308, 764 S.E.2d 511, 513 (2014).  Unlike the majority, I would not require that a defendant testify or present evidence that he acted in a criminally negligent manner in order to obtain such a charge but rather would review the evidence, including that presented by the State, to determine whether a charge was warranted.  Here, there is evidence from which a jury could find that petitioner acted intentionally in moving to deflect the perceived threat, but with reckless disregard of the possible consequences.  That petitioner is an experienced martial arts practitioner goes to his intent when acting and to the skill with which he executed the move, not to his reasoned consideration of the possibility that the consequence could be that the victim would stab herself in the neck.

I would reverse the decision of the Court of Appeals and order a new trial.