# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Shane Adam Burdette, Petitioner.

Appellate Case No. 2017-001990

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Oconee County
J. Cordell Maddox Jr., Circuit Court Judge

---

Opinion No. 27910
Heard February 21, 2019 – Filed July 31, 2019

---

## REVERSED AND REMANDED

---

Appellate Defender Susan Barber Hackett, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Senior Assistant Attorney General William M. Blitch Jr., and Assistant Attorney General Susannah Rawl Cole, all of Columbia; and Solicitor David Rhys Wagner Jr., of Anderson, all for Respondent.

---

**JUSTICE JAMES:** Shane Adam Burdette was indicted and tried for murder and possession of a weapon during the commission of a violent crime. Over Burdette's objection, the trial court charged the jury that it could infer the element of malice from the use of a deadly weapon. The jury convicted Burdette of the lesser-included offense of voluntary manslaughter and possession of a weapon during the commission of a violent crime. The court of appeals affirmed Burdette's conviction, holding that although the trial court erred in giving the inferred malice jury instruction, Burdette suffered no prejudice. *State v. Burdette*, Op. No. 2017-UP-237 (S.C. Ct. App. filed June 7, 2017). We granted Burdette's petition for a writ of certiorari to review the court of appeals' decision. We hold the trial court's erroneous jury instruction was not harmless beyond a reasonable doubt. We therefore reverse and remand for a new trial on the offenses of voluntary manslaughter and possession of a weapon during the commission of a violent crime. We also hold, regardless of the evidence presented at trial, a trial court shall no longer instruct a jury that malice may be inferred from the use of a deadly weapon.

## I. FACTUAL AND PROCEDURAL HISTORY

Burdette shot and killed Evan Tyner (Victim). Victim died from a single shotgun pellet wound to the back of his neck. After the shooting, Burdette gave several inconsistent statements to law enforcement. The State's theory of the case and Burdette's theory of the case were substantially different. The State claimed murder; Burdette claimed accident. Burdette was indicted for murder and possession of a weapon during the commission of a violent crime.

At trial, evidence was presented in support of both the State's and Burdette's theories of the case. Following the close of the presentation of evidence, the trial court informed the parties it intended to charge the jury on the law of murder, voluntary manslaughter, involuntary manslaughter, and accident. The trial court gave the parties a copy of its proposed jury charge for review. Burdette objected to the trial court's proposed instruction that inferred malice could arise when a deadly weapon is used. Citing *State v. Belcher*,[1] Burdette argued the instruction was inappropriate because there was evidence presented that could reduce, excuse, justify, or mitigate the homicide. The trial court gave the charge over Burdette's objection.

The trial court charged the law of murder, voluntary manslaughter, involuntary manslaughter, and accident. When charging the law of murder, the trial

---

[1] 385 S.C. 597, 612, 685 S.E.2d 802, 810 (2009).

court defined murder as a killing with malice aforethought and stated to the jury, "Inferred malice may also arise when the deed is done with a deadly weapon." When charging the law of voluntary manslaughter, the trial court did not specifically inform the jury that malice is not an element of that offense. However, when charging the law of involuntary manslaughter, the trial court specifically informed the jury that malice is not an element of that offense. Of course, malice is not an element of either voluntary or involuntary manslaughter.

After deliberating for about one hour, the jury requested additional instruction from the trial court on the law of murder, voluntary manslaughter, and involuntary manslaughter to provide the jury with "a better understanding" of the different charges. The trial court essentially repeated its previous instruction and again included in the murder instruction that the jury could infer the element of malice from the use of a deadly weapon. The trial court again did not inform the jury that malice is not an element of voluntary manslaughter but did inform the jury that malice is not an element of involuntary manslaughter.

The jury found Burdette not guilty of murder but guilty of voluntary manslaughter and possession of a weapon during the commission of a violent crime. The trial court sentenced Burdette to twenty-five years in prison, suspended upon the service of fifteen years and five years' probation for voluntary manslaughter. The trial court also sentenced Burdette to a consecutive prison term of five years for the weapon possession charge.

Burdette appealed, arguing the trial court erroneously instructed the jury that malice may be inferred from the use of a deadly weapon because evidence was presented tending to reduce, mitigate, excuse, or justify the homicide. The court of appeals affirmed in an unpublished opinion. *State v. Burdette*, Op. No. 2017-UP-237 (S.C. Ct. App. filed June 7, 2017). Although the court of appeals agreed the inferred malice jury instruction was erroneous, it held Burdette "suffered no prejudice" from the erroneous instruction. *Id.* The court of appeals reasoned Burdette was convicted of voluntary manslaughter—not murder—and because malice is not an element of voluntary manslaughter, the inferred malice instruction could not have contributed to the verdict. *Id.* This Court granted certiorari to review the court of appeals' decision.

## II. ISSUES PRESENTED

1. Did the trial court err in giving the inferred malice instruction?

2. If error, was the error harmless beyond a reasonable doubt?

3. Does the inferred malice instruction continue to have validity?

## III. DISCUSSION

### A. The Inferred Malice Jury Instruction

#### 1. Was the Jury Instruction Erroneous?

There was evidence presented at trial that tended to reduce, mitigate, excuse, or justify Burdette's killing of Victim—making the trial court's inferred malice instruction inappropriate. *See State v. Stanko*, 402 S.C. 252, 260, 741 S.E.2d 708, 712 (2013) ("A jury charge instructing that malice may be inferred from the use of a deadly weapon is no longer good law in South Carolina where evidence is presented that would reduce, mitigate, excuse, or justify the homicide." (citing *State v. Belcher*, 385 S.C. 597, 600, 685 S.E.2d 802, 803-04 (2009))). The State rightly concedes this point. The court of appeals therefore correctly held the giving of the instruction in this case was error.

#### 2. Was the Trial Court's Error Harmless?

An erroneous instruction alone is insufficient to warrant this Court's reversal. "Errors, including erroneous jury instructions, are subject to harmless error analysis." *Belcher*, 385 S.C. at 611, 685 S.E.2d at 809. "When considering whether an error with respect to a jury instruction was harmless, we must 'determine beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" *State v. Middleton*, 407 S.C. 312, 317, 755 S.E.2d 432, 435 (2014) (quoting *State v. Kerr*, 330 S.C. 132, 144-45, 498 S.E.2d 212, 218 (Ct. App. 1998)). "In making a harmless error analysis, our inquiry is not what the verdict would have been had the jury been given the correct charge, but whether the erroneous charge contributed to the verdict rendered." *Id.* (quoting *Kerr*, 330 S.C. at 145, 498 S.E.2d at 218).

The State maintains, and the court of appeals held, Burdette was not prejudiced by the trial court's erroneous inferred malice instruction (1) because

Burdette was convicted of voluntary manslaughter, and (2) since malice is not an element of voluntary manslaughter, the inclusion of the inferred malice instruction in the jury instruction on murder could not have contributed to the verdict. Burdette argues a reading of the jury charge as a whole compels the conclusion that the trial court's error was not harmless. We agree with Burdette.

The trial court's charge to the jury of the elements of murder, voluntary manslaughter, and involuntary manslaughter take up a mere six pages of the overall trial transcript. Absent a self-defense instruction, that is the typical length of this portion of the jury instruction. As is customary, the trial court first instructed the jury on the offense of murder, then the lesser-included offense of voluntary manslaughter, and then the lesser-included offense of involuntary manslaughter.

In many instances, a lesser-included offense is deemed to exist because the lesser offense is "one whose elements are wholly contained within the crime charged." *State v. Dickerson*, 395 S.C. 101, 118, 716 S.E.2d 895, 904 (2011) (citing *State v. Northcutt*, 372 S.C. 207, 215, 641 S.E.2d 873, 877 (2007)). This is known as the "elements test." *See Northcutt*, 372 S.C. at 215, 641 S.E.2d at 877. In those cases, the trial court simply explains to the jury that the lesser offense includes all of the elements of the greater offense except for one or more elements, and the trial court then lists those elements that are not included in the lesser offense. In those cases, the trial court is able to explain the distinction between the greater and lesser offense in an orderly and very understandable fashion. For example, possession of cocaine is a lesser-included offense of possession of cocaine with intent to distribute (PWID) because possession of cocaine contains all the elements of PWID except for the intent to distribute.

In other instances, such as in the case at bar, one offense may be considered a lesser offense of another not by virtue of the elements test, but rather because it "has traditionally been considered a lesser included offense of the greater offense charged." *Northcutt*, 372 S.C. at 216, 641 S.E.2d at 877-78. In those instances, the elements of the lesser offense are not "wholly contained" within the greater offense, and the trial court cannot simply list for the jury those elements not included in the lesser offense. Therefore, there is greater potential for jury confusion when the lesser offense has traditionally been considered a lesser offense of the greater offense. Because there is greater potential for jury confusion, there is a great need for clarity when the trial court explains the greater and lesser offenses to the jury.

Voluntary manslaughter is a lesser offense of murder not by virtue of the elements test, but because it has traditionally been considered a lesser offense of

murder. Therefore, a trial court must allow the jury to consider the lesser offense of voluntary manslaughter if there is evidence from which it could be inferred that a defendant committed voluntary manslaughter rather than the greater offense of murder. "Voluntary and involuntary manslaughter are both lesser-included offenses of murder." *State v. Sams*, 410 S.C. 303, 309, 764 S.E.2d 511, 514 (2014). Obviously, neither of these offenses are considered lesser offenses of murder by virtue of the elements tests, as the elements of neither offense are "wholly contained" in the elements of murder.

In *State v. Scott*, we repeated the general rule that involuntary manslaughter is "the unintentional killing of another without malice while engaged in either (1) the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm, or (2) the doing of a lawful act with a reckless disregard for the safety of others." 414 S.C. 482, 487, 779 S.E.2d 529, 531 (2015) (quoting *Sams*, 410 S.C. at 309, 764 S.E.2d at 514). Involuntary manslaughter mandates a showing of criminal negligence, defined as "the reckless disregard of the safety of others." S.C. Code Ann. § 16-3-60 (2015). "Recklessness is a state of mind in which the actor is aware of his or her conduct, yet consciously disregards a risk which his or her conduct is creating." *State v. Pittman*, 373 S.C. 527, 571, 647 S.E.2d 144, 167 (2007).

When considering whether an incorrect jury instruction constitutes harmless error, we are required to review the trial court's charge to the jury in its entirety. *See Stanko*, 402 S.C. at 264, 741 S.E.2d at 714 ("Jury instructions should be considered as a whole, and if as a whole, they are free from error, any isolated portions which may be misleading do not constitute reversible error."). We will therefore review the trial court's instructions on the offenses of murder, voluntary manslaughter, and involuntary manslaughter. Because voluntary and involuntary manslaughter are lesser offenses of murder under the more cumbersome "traditional" test, it was particularly important for the trial court to clearly explain the elements of all three offenses in this case.

As to the count of murder, the trial court charged the following points to the jury: the State must prove the defendant killed another person with malice aforethought; malice is hatred, ill will, or hostility towards another person; malice is the intentional doing of a wrongful act without just cause or excuse and with an intent to inflict an injury or under circumstances that the law will infer an evil intent; malice need not exist for any particular time before the act is committed, but malice must exist in the mind of the defendant just before and at the time the act is committed; therefore, there must be a combination of the previous evil intent and the

act; malice aforethought may be expressed or inferred, but the terms "expressed" or "inferred" do not mean different kinds of malice, but instead mean the manner in which the malice can be proven to have existed, and that is by direct or circumstantial evidence; "expressed malice" is shown when a person speaks words which express ill will or hatred for another, or when the person prepared beforehand to do the act which was later accomplished, with the examples being given of a person "lying in wait" for a person or other acts of preparation going to show that the deed was in the defendant's mind ahead of time; malice may be inferred from conduct showing a total disregard for human life; "inferred malice" may arise when the deed is done with a deadly weapon; the trial court defined "deadly weapon" and gave examples of deadly weapons.

The trial court then instructed the jury that if it found the State failed to prove beyond a reasonable doubt that the defendant committed murder, it must consider whether the State proved beyond a reasonable doubt that the defendant committed the lesser-included offense of voluntary manslaughter. The trial court charged the following: the State must prove beyond a reasonable doubt that the defendant took the life of another person in the sudden heat of passion based on sufficient legal provocation; both heat of passion and sufficient legal provocation must be present at the time of the killing; sudden heat of passion may, for a time, affect a person's self-control and temporarily disturb a person's reason; this sudden heat of passion must be the type that would make an ordinary person unable to coolly reflect on his actions and would produce an uncontrollable influence or impulse to do violence; sufficient legal provocation must be the type that would make a person of ordinary reason and caution become enraged and lose control temporarily; such provocation necessary for voluntary manslaughter must come from some act by the victim or related to the victim; words alone are insufficient to support legal provocation; where death is caused by the use of a deadly weapon, the words must be accompanied by some overt threatening act which could have produced the heat of passion; exercising a legal right, no matter how offensive it may be to another, is never sufficient legal provocation to support voluntary manslaughter; if the heat of passion cools or if there was enough time between the provocation and the killing for the passion of a reasonable person to cool, the killing would not be voluntary manslaughter; when considering whether a reasonable person would have had enough time to cool down or cool off, all of the circumstances surrounding the killing must be considered; it is permissible to consider the nature of the provocation, if any, the defendant's mental and physical state, and the circumstances and relationship between the parties.

Importantly however, the trial court did not explain to the jury that malice is not an element of voluntary manslaughter, despite section 16-3-50 of the South Carolina Code (2015) referring to "manslaughter" as "the unlawful killing of another without malice, express or implied."

After concluding the voluntary manslaughter instruction, the trial court instructed the jury that if it found the State failed to prove beyond a reasonable doubt that the defendant committed murder or voluntary manslaughter, it must consider whether the State proved beyond a reasonable doubt that the defendant committed the lesser-included offense of involuntary manslaughter. Specifically, the trial court instructed the jury: the State must prove beyond a reasonable doubt that the defendant unintentionally killed the victim "without malice" but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm, or that the defendant unintentionally killed the victim without malice while engaged in a lawful activity with reckless disregard for the safety of others; "unintentional" means the defendant did not intend for anyone to be killed or seriously injured; "reckless disregard for the safety of others" requires more than mere negligence or carelessness; "mere negligence" or "carelessness" is the failure to use the care that a person of ordinary reason would use under the same or similar circumstances; "recklessness" is a conscious failure to use ordinary care; exercising "reckless disregard for the safety of others" means that one is not interested in the consequences of his acts or the rights and safety of others; if a person who knows or should know that ordinary care requires certain precautions to be taken for the safety of others when using a dangerous instrumentality such as a gun or car, but that person fails to use those precautions without concern, the person's actions are considered reckless; the State must prove beyond a reasonable doubt that the defendant's act was the proximate cause of death; "proximate cause" is direct, immediate, and efficient cause; "proximate cause" is the cause without which the death of the person would not have resulted; there must be a chain of causation from the time of the injury inflicted by the defendant until the time of the victim's death; proximate cause does not necessarily mean that it occurred immediately prior to the victim's death.

The trial court twice instructed the jury on voluntary manslaughter but did not include the fact that it is a killing without malice. The trial court twice instructed the jury that involuntary manslaughter is the unintentional killing of another *without malice*. Burdette contends that while the trial court correctly charged the law of involuntary manslaughter, the trial court should have similarly instructed the jury that malice is not an element of voluntary manslaughter. Burdette claims the charge as a whole likely led the jury to incorrectly believe that malice is an element of voluntary manslaughter. Consequently, Burdette argues, the jury was left with the

impression that it could use the inference of malice deriving from the use of a deadly weapon as a basis for convicting him of voluntary manslaughter.

After consideration of the jury instructions as a whole, we are compelled to agree with Burdette. When the trial court instructed the jury that malice was not an element of involuntary manslaughter, but did not instruct the jury that malice was not an element of voluntary manslaughter, the jury was left with the incorrect impression that malice is an element of voluntary manslaughter, which allowed the jury to use the improperly charged inference of malice from the use of a deadly weapon to find Burdette guilty of voluntary manslaughter. The prejudice stemming from the erroneous and confusing instructions was compounded when, during deliberations, the jury requested the trial court to provide a "better understanding" of the charges of murder, voluntary manslaughter, and involuntary manslaughter, and the trial court repeated its original instructions which (1) included the erroneous inferred malice instruction and (2) did not include an instruction that malice is not an element of voluntary manslaughter. The charge as a whole necessarily resulted in confusion that contributed to the verdict that Burdette was guilty of voluntary manslaughter. Therefore, we cannot conclude the trial court's erroneous instruction was harmless beyond a reasonable doubt.

### B. Continuing Validity of the Inferred Malice Instruction in South Carolina

In *Belcher*, we held the trial court could no longer give the inferred malice from the use of a deadly weapon charge in cases in which evidence was presented that would reduce, mitigate, excuse, or justify a homicide or an assault and battery with the intent to kill. 385 S.C. at 612, 685 S.E.2d at 810. We now consider whether the permissive inference charge may be given in *any setting*, even those in which no evidence is presented that would reduce, mitigate, excuse, or justify the commission of an offense containing the element of malice. We have held in other settings that it is improper to give examples of conduct the jury may consider when determining whether the State has proven an element of a crime or when determining whether certain other facts have been proven or disproven. *See, e.g.*, *State v. Grant*, 275 S.C. 404, 407-08, 272 S.E.2d 169, 171 (1980) (holding it was improper for the trial judge to charge the jury that the defendant's flight may be considered as evidence of guilt); *State v. Hughey*, 339 S.C. 439, 452, 529 S.E.2d 721, 728 (2000) (holding, in a voluntary manslaughter case, the trial court correctly refused the defendant's request to charge the jury specific examples of conduct that might be considered as evidence of legal provocation, as the giving of such examples would be an impermissible charge on the facts), *overruled on other grounds by Rosemond v. Catoe*, 383 S.C.

320, 680 S.E.2d 5 (2009); *State v. Cheeks*, 401 S.C. 322, 328-29, 737 S.E.2d 480, 484 (2013) (holding, in a drug trafficking case, that the trial court must not charge the jury that actual knowledge of the presence of a drug is strong evidence of a defendant's intent to control its disposition or use).

In *Cheeks*, we noted, "Simply because certain facts may be considered by the jury as evidence of guilt in a given case where the circumstances warrant, it does not follow that [the jury] should be charged that these facts are probative of guilt.  It is always for the jury to determine the facts, and the inferences that are to be drawn from these facts."  401 S.C. at 328, 737 S.E.2d at 484.  When the trial court tells the jury it may use evidence of the use of a deadly weapon to establish the existence of malice, a critical element of the charge of murder, the trial court has directly commented upon facts in evidence, elevated those facts, and emphasized them to the jury.  Even telling the jury that it is to give evidence of the use of a deadly weapon only the weight the jury determines it should be given does not remove the taint of the trial court's injection of its commentary upon that evidence.  Such an instruction is no different than an instruction that the jury may use evidence of flight as evidence of guilt.  A jury instruction that malice may be inferred from the use of a deadly weapon is an improper court-sponsored emphasis of a fact in evidence—that the deed was done with a deadly weapon—and it should no longer be permitted.

We decide this issue solely under the common law; pursuant to our policy-making role under the common law, we hold, regardless of the evidence presented at trial, a trial court shall not instruct the jury that it may infer the existence of malice when the deed was done with a deadly weapon.  Of course, whether the deed was done with a deadly weapon or not, the State and the defendant are free to argue the existence or nonexistence of malice based on the evidence in the record.  For example, if evidence is introduced that the deed was done with a deadly weapon, the State is free to argue to the jury that it should infer the existence of malice based on that fact and any other facts that would naturally and logically allow a jury to conclude the defendant acted with malice aforethought.[2]  Similarly, if the deed was not done with a deadly weapon, a defendant is free to argue the absence of malice based on that fact and any other facts that would naturally and logically allow a jury to conclude the State failed to prove beyond a reasonable doubt that the defendant acted without malice aforethought.  "It is axiomatic that some matters appropriate

---

[2] However, we repeat our comment in *State v. Cartwright*: "We do not suggest there are no limits to a party's jury argument, for the law provides limits, as enhanced by Due Process protections."  425 S.C. 81, 93 n.3, 819 S.E.2d 756, 762 n.3 (2018).

for jury argument are not proper for charging. 'Do jurors need the court's permission to infer something? The answer is, of course not.'" *Belcher*, 385 S.C. at 612 n.9, 685 S.E.2d at 810 n.9 (quoting Bruce A. Antkowiak, *The Art of Malice*, 60 RUTGERS L. REV. 435, 476 (2008)).

Of course, our ruling does not prohibit a trial court from citing outside the presence of the jury the proposition that malice may be inferred from the use of a deadly weapon. For example, when ruling on a defendant's motion for directed verdict on the ground the State failed to prove the element of malice, a trial court may take into account the fact that the deed was done with a deadly weapon.

## IV. CONCLUSION

We hold the trial court's erroneous inferred malice instruction was not harmless beyond a reasonable doubt. We reverse Burdette's convictions and remand for a new trial on the charges of voluntary manslaughter and possession of a weapon during the commission of a violent crime. Because Burdette was acquitted of murder, he cannot be retried for murder. *See State v. Parker*, 391 S.C. 606, 612, 707 S.E.2d 799, 801 (2011) (providing that pursuant to the law of double jeopardy, a defendant may not be prosecuted for the same offense after an acquittal).

We further overrule our precedent to the extent it permits a jury instruction that malice may be inferred from the defendant's use of a deadly weapon.[3]

---

[3] Our decision today overrules in part a considerable amount of South Carolina case law. We overrule those cases insofar as it can be construed that we have approved a trial court's charge that a jury may infer the existence of malice from the defendant's use of a deadly weapon. The following represents a non-exhaustive list of such cases: *Gibson v. State*, 416 S.C. 260, 786 S.E.2d 121 (2016); *State v. Stanko*, 402 S.C. 252, 741 S.E.2d 708 (2013); *State v. Belcher*, 385 S.C. 597, 685 S.E.2d 802 (2009); *Sheppard v. State*, 357 S.C. 646, 594 S.E.2d 462 (2004); *Gibson v. State*, 355 S.C. 429, 586 S.E.2d 119 (2003); *Tate v. State*, 351 S.C. 418, 570 S.E.2d 522 (2002); *State v. Harvin*, 345 S.C. 190, 547 S.E.2d 497 (2001); *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689 (1996); *Plyler v. State*, 309 S.C. 408, 424 S.E.2d 477 (1992); *Carter v. State*, 301 S.C. 396, 392 S.E.2d 184 (1990); *State v. Smith*, 288 S.C. 329, 342 S.E.2d 600 (1986); *State v. Peterson*, 287 S.C. 244, 335 S.E.2d 800 (1985); *State v. Lucas*, 285 S.C. 37, 328 S.E.2d 63 (1985); *State v. Campbell*, 287 S.C. 377, 339 S.E.2d 109 (1985); *State v. Woods*, 282 S.C. 18, 316 S.E.2d 673 (1984); *State v. Jennings*, 280 S.C. 62, 309 S.E.2d 759 (1983); *State v. Elmore*, 279 S.C. 417, 308 S.E.2d 781 (1983); *State v. Koon*, 278 S.C. 528, 298 S.E.2d 769

Regardless of the evidence presented at trial, trial courts shall not instruct a jury that the element of malice may be inferred when the deed is done with a deadly weapon. Our ruling today is effective in this case and in those cases which are pending on direct review or are not yet final, so long as the issue is preserved. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final"). However, today's ruling will not apply to convictions challenged on post-conviction relief. *See Belcher*, 385 S.C. at 613, 685 S.E.2d at 810 (citing *Teague v. Lane*, 489 U.S. 288 (1989)).

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE, HEARN, and FEW, JJ., concur.**

---

(1982); *State v. Friend*, 276 S.C. 552, 281 S.E.2d 106 (1981); *State v. Hyman*, 276 S.C. 559, 281 S.E.2d 209 (1981); *State v. Crocker*, 272 S.C. 344, 251 S.E.2d 764 (1979); *State v. Robinson*, 149 S.C. 439, 147 S.E. 441 (1929); *State v. Portee*, 122 S.C. 298, 115 S.E. 238 (1922); *State v. Jackson*, 36 S.C. 487, 15 S.E. 559 (1892); *State v. Levelle*, 34 S.C. 120, 13 S.E. 319 (1891); *State v. King*, 412 S.C. 403, 772 S.E.2d 189 (Ct. App. 2015); *State v. Frazier*, 401 S.C. 224, 736 S.E.2d 301 (Ct. App. 2013); *State v. Price*, 400 S.C. 110, 732 S.E.2d 652 (Ct. App. 2012); *State v. Kinard*, 373 S.C. 500, 646 S.E.2d 168 (Ct. App. 2007); *State v. Franklin*, 310 S.C. 122, 425 S.E.2d 758 (Ct. App. 1992); *State v. Merriman*, 287 S.C. 74, 337 S.E.2d 218 (Ct. App. 1985). We have not included the cases that were previously overruled by *Belcher*.